**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 31264**

| | |
|---|---|
| STATE OF IDAHO,<br><br>      Plaintiff-Respondent,<br><br>v.<br><br>PAUL LAWRENCE ROGERS,<br><br>      Defendant-Appellant. | **2006 Opinion No. 59**<br><br>**Filed: August 22, 2006**<br><br>Stephen W. Kenyon, Clerk |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

Judgment of conviction for possession of a controlled substance and order terminating defendant from drug court, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Courtney E. Beebe, Deputy Attorney General, Boise, for respondent. Courtney E. Beebe argued.

---

GUITIERREZ, Judge

Paul Lawrence Rogers appeals from his judgment of conviction for possession of a controlled substance, which was entered after he was terminated from the Ada County Drug Court program. Rogers contends the court violated his constitutional right to due process when it discharged him from the drug court program. He also argues that the court's factual findings, that he had violated conditions of the drug court program, are clearly erroneous. We affirm.

## I.

## BACKGROUND

Rogers was initially charged with possession of methamphetamine, Idaho Code § 37-2732(c), and driving without privileges, I.C. § 18-8001(3). Thereafter, the prosecutor filed a motion to transfer the case to the Ada County Drug Court. The Ada County Drug Court Rules

1

("rules")[1] provide that a defendant must plead guilty to the charge in order to enter the program and if the defendant is terminated from the program the matter proceeds directly to sentencing. The rules further provide that the presiding drug court judge[2] has the final say over who may enter the program and whether a defendant will be terminated from the program for violations of rules. In accord, and in light of a pending plea agreement, the instant case was transferred to drug court, along with a separate case involving unrelated burglary and attempted grand theft charges against Rogers. Rogers pled guilty to the possession of methamphetamine charge and the remaining charges were dismissed. As part of the plea procedure, Rogers filled out and signed a Drug Court Guilty Plea Form, wherein he acknowledged receipt of the Ada County Drug Court Participant Handbook, and a Phase I – Contract. Pursuant to the rules, Rogers was released on his own recognizance.

Rogers participated in the drug court program for over ten weeks. The program included, among other things, mandatory drug testing, attendance in treatment programs, and frequent sessions with the drug court judge. Pursuant to the rules, Rogers' counselor submitted progress reports[3] to the drug court judge on a regular basis. Rogers would then meet with the drug court judge on a relatively informal basis and discuss his progress in the program. At the outset, Rogers performed poorly, including among other violations, numerous positive drug tests[4] and missed treatment sessions. While the drug court judge repeatedly sanctioned Rogers for violating the program's conditions, the judge chose not to terminate him from the program at those times. Eventually, however, Rogers appeared to turn himself around and his performance earned praise from the presiding judge. Then, during a regularly scheduled status hearing at

---

[1]     There is no document in the record entitled the "Ada County Drug Court Rules," and we do not know if one exists. Instead, as explained in more detail below, we glean the rules and procedures from three documents in the record: the Drug Court Guilty Plea Form, the Ada County Drug Court Participant Handbook, and the Phase I – Contract.

[2]     The Ada County Drug Court judge is a sitting Ada County district judge.

[3]     The record does not reflect whether Rogers was provided copies of these progress reports.

[4]     The rules provide that no new criminal charges will be filed as the result of any positive drug tests.

about week ten, the court confronted Rogers with information contained in a progress report, reflecting the details of allegations of Rogers' involvement in a business venture, "Desire, Inc." In response to the judge's questioning, Rogers stated that it "was an adult entertainment company with strippers for bachelor parties and an escort business also." Rogers admitted that he had been recruiting females, including participants in the drug court program, into the business by handing out business cards. Rogers contended that the business was a legal adult entertainment business that he had contemplated before entering drug court. This contemplated business, he said, never got off the ground. The judge did not believe Rogers, stating, "I think what is happening here is that you're enticing female members of the drug court program into prostitution." The judge ultimately told Rogers that he would probably be terminated from drug court but that the court would give him an opportunity at a future hearing to show cause why he should be retained. No written report of violation was filed.[5]

Before the show cause hearing, Rogers wrote a letter to the court stating his desire to stay in the drug court program and further reiterating that Desire, Inc., was not a prostitution ring, that he conceived the idea before entering the drug court program, and that he ended his involvement in the unformed business after entering the program. At the show cause hearing, no witnesses were called, but the judge invited Rogers and his counsel[6] to make statements. Rogers once again said the court's assessment of Desire, Inc., was mistaken and expressed his desire to stay in the program. The judge then terminated Rogers from the drug court program, stating:

> I just want to tell you why I am kicking you out of drug court.
> You had numerous additional compliance issues considering the program on February 11th, 2004. A bench warrant was issued on February 23rd, 2004 after you missed a court-ordered orientation program with the drug court coordinator. You missed a UA on February 23rd. You were late for a UA on the 24th. You had positive UAs on the 24th and 25th of Feburary. You had positive UAs on March 29th, 2004, and April 1st, 2004. You missed groups on the 29th of March, the 30th of March, and the 31st of March. You were warned on the first of April about not contacting your mentor. You have missed UAs on the third and fourth of April. You had another bench warrant issued for absconding on the sixth of April. You were given 90 and 90 relapse prevention, daily check-ins, and

---

[5] In two previous instances of misconduct by Rogers, written reports of violation were filed.

[6] At the normal status hearings, Rogers, as far as the record reflects, appeared unrepresented by counsel.

3

start your day with Clara. And in lieu of this charge you were sanctioned for four hours of community service on May 12th, 2004 for failing to contact your mentor as required. You were given one day of SILD on June 9th, 2004 for obtaining unauthorized prescription medication without a doctor's note stating that you had disclosed your addiction and participation in the drug court program to the doctor. And there were some other matters as well.

So with respect to this, I appreciate the fact that you don't think you did anything wrong. And that's sort of my point. I'm not going to have you in drug court with 137 people, half of whom are females, where you don't think there is anything in the world wrong with setting up an adult entertainment business called Desires Inc., and charging $50 apiece for a finder's fee and having the girls work outside. I think it certainly was an adult entertainment business and you just can't do anything like that in drug court, particularly where you don't think you are doing anything wrong.

The court then set the matter for sentencing. The case did not, however, transfer to another district court judge for sentencing. Instead, the drug court judge, now apparently acting in his district court capacity, continued to preside over the case.[7]

Following the show cause hearing, Rogers' counsel moved for another hearing on Rogers' discharge or, in the alternative, reconsideration of the discharge.[8] This motion was not addressed until the sentencing hearing, where the district court stated:

**THE COURT:** Keep in mind that the issue of the due process that the defendant is entitled to is a dismissal from drug court I think is a really relevant and important issue. And I have likened the dismissal from drug court and due process that should be afforded to the defendant at such a proceeding to be somewhat akin to a jurisdictional review hearing when a person is on a rider and appears before the Jurisdictional Review Committee of the Idaho Department of Corrections.

I want to give the defendant an opportunity to speak and be heard and-- however, as a general rule, as a general rule I don't allow an evidentiary hearing on that issue.

This is for several reasons. The statute of the Idaho Drug Court Act specifies and sets forth that nobody is entitled to be in drug court, and the court makes these determinations about whether or not to expel somebody from the drug court program on an ad hoc basis, on a case-by-case basis based on the facts that are in front of the court at the time.

---

[7] The rules are silent on this matter. Instead, they simply state, in summary, that upon termination from the program, "you will be sentenced on the original charge."

[8] Contemporaneous therewith, defense counsel filed a motion for the preparation of expedited transcripts of the previous two hearings, which the judge granted.

> And the court felt and still feels that I have sufficient information at the time to make the determination that the defendant was no longer an appropriate person to be in the Ada County drug court program.
> I believe that I've already made those representations on the record at the time of the discharge.

Rogers then presented the testimony of three witnesses. The first two testified, generally, that there was no prostitution ring and that Rogers' adult entertainment business was never started. The third was Rogers' counselor in drug court, who testified concerning Rogers' progress in the program and information concerning Rogers' participation in the business. Thereafter, the district court sentenced Rogers to a five-year term of imprisonment, with a one-year minimum term, subject to a period of retained jurisdiction.

On appeal, Rogers asserts that he had a protected liberty interest in remaining enrolled in drug court and that his termination from the program without adequate notice or an evidentiary hearing violated his constitutional right to due process.

## II.

## ANALYSIS

### A.     Idaho's Drug Courts

As a preliminary matter, a short discussion of Idaho's drug court program is warranted. The introduction of the problem-solving approach[9] in the courts has given rise to innovative diversion efforts such as drug court programs. In 2001, the Idaho legislature enacted the Idaho Drug Court Act, by 2005 amendment now known as the Idaho Drug Court and Mental Health Court Act (the "Act"). I.C. §§ 19-5601, *et seq.* The Act provides, *inter alia*, that the district court in each Idaho county may establish a drug court. I.C. § 19-5603. With the exception of eligibility standards, *see* I.C. § 19-5604, the Act itself provides no guidance on the inner workings or procedures to be followed by a drug court. Instead, the Act authorized the Idaho Supreme Court to establish a Drug Court and Mental Health Court Coordinating Committee and vested it with responsibility for establishing standards and guidelines and providing ongoing

---

[9]     "Problem-solving justice is an umbrella term that describes a wide range of specialized courtrooms that are working to ensure not just that the punishment fits the crime (as courts have always tried to do, with varying degrees of success) but that the process fits the problem." Greg Berman and John Feinblatt, *The Case for Problem-Solving Justice, Good Courts*, The New Press, 4-5, 2005.

oversight of the operation of drug courts. I.C. § 19-5606. Effective September 26, 2003, the Committee has adopted guidelines for adult drug courts. See Idaho Adult Drug Court Guidelines for Effectiveness and Evaluation.[10] These guidelines do not specify exactly how a drug court program must be run and, as specifically stated therein, the guidelines "are not rules of procedure and have no effect of law." In addition, effective August 15, 2005, the Idaho Supreme Court adopted an administrative rule to provide additional direction for the development, establishment, operations, and termination of drug courts and mental health courts. *See* Idaho Court Administrative Rule 55. As relevant to the instant appeal, the rule addresses primarily how a drug court is created and it does not mandate that a drug court program must be operated in any particular way.

As of January 2006, Idaho had forty-four drug courts in operation spread out over approximately twenty-three counties and at differing levels of the judicial system within some counties. From the above discussion, it must be assumed that each drug court in Idaho operates uniquely and, therefore, the analysis in this case might not be applicable to any other particular drug court program in the state. Against this backdrop, we proceed to the issue at hand.

**B.      Termination of Drug Court Participation in Ada County**

This is a case of first impression and the first opportunity for the Idaho appellate courts to address the rights of drug court participants upon termination from a drug court program. Rogers contends the drug court violated his constitutional right to due process when it discharged him from the Ada County Drug Court program. Specifically, he contends that he is entitled to the same process afforded to a probationer or parolee, including notice in writing of alleged violations of the conditions of the drug program and the evidence against him, and the opportunity to present witnesses and evidence on his behalf, and an opportunity to be heard.

"To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Thus in this case, taking into account Rogers' concerns, we hold that the rights of drug court participants can be preserved and advanced by employing a contract analysis which, importantly, will not compromise the effectiveness of drug court programs.

---

[10]      This publication, and additional information on Idaho's drug courts, may be found on the Idaho Supreme Court website, www.isc.idaho.gov/dcmain.htm.

Here, the usual criminal process has been superseded by agreement. At the plea hearing, the court explained to Rogers the consequences of being terminated from drug court, stating:

> Let me tell you what I mean by that in a drug court context. If you fail the drug court program, you would be sentenced on the felony offense that you're pleading guilty to this afternoon . . . . And I've got to tell you, Mr. Rogers, a good share of the people who enter drug court don't make it. At least a third, over a third of them, fail it. And they either go to prison or they do a rider.

The district court then discussed the Drug Court Guilty Plea Form that Rogers had filled out and signed.[11] On this form, Rogers indicated that he was pleading guilty, that he sought admission into the drug court program, that he had received and reviewed a copy of the Drug Court Participant Handbook,[12] that he accepted all of the program's conditions and rules, and that he understood he could be terminated from the program by the drug court judge for any single violation. The court ultimately decided to accept Rogers' guilty plea and enter him into the drug court program. Rogers and the drug court judge then both signed a document entitled "Phase I – Contract"[13] which outlined Rogers' drug court responsibilities during its initial phase and stated that his "performance on this contract will be reported to the Judge to monitor your status in treatment." From all of this, it is clear that Rogers' participation in the drug court program occurred pursuant to a contract; moreover, that contract incorporated the terms of the Drug Court Guilty Plea Form, the Drug Court Participant's Handbook, and the Phase I – Contract. It is this contract that governs Rogers' participation and termination from the drug court program.

A review of the purposes and policies underlying the Ada County Drug Court program confirms that contract law rather than due process law is applicable in cases such as this. Drug courts in Idaho "closely supervise, monitor, test and treat substance abusers" and are based on partnerships among the courts, law enforcement, corrections and social welfare agencies. I.C. § 19-5602(2). They offer a therapeutic setting involving "a regimen of graduated sanctions and rewards, substance abuse treatment, close court monitoring and supervision of progress, educational or vocational counseling as appropriate, and other requirements." I.C. § 19-5603.

---

[11]     *See* Appendix 1.

[12]     *See* Appendix 2.

[13]     *See* Appendix 3.

7

The therapeutic effectiveness of these programs relies on a drug court's ability to immediately reward or punish participants for their behavior--the ultimate sanction, of course, being termination from the program. By contract, drug court participants, like Rogers, agree to subject themselves to this type of treatment regimen with eyes wide open; the signed Drug Court Guilty Plea Form, the Drug Court Participant Handbook, and the Phase I – Contract provide ample notice of the program's conditions and terms and that failure to comply, i.e., breach of the agreement, could result in sanctions or termination from the program.

It is well-settled that agreements between criminal defendants and the State, in the form of plea agreements, are contractual in nature and must be measured by contract law standards. *See, e.g.*, *Dunlap v. State*, 141 Idaho 50, 63, 106 P.3d 376, 389 (2004); *State v. Hosey*, 134 Idaho 883, 886, 11 P.3d 1101, 1104 (2000); *State v. Lutes*, 141 Idaho 911, 914, 120 P.3d 299, 302 (Ct. App. 2005); *State v. Doe*, 138 Idaho 409, 410-11, 64 P.3d 335, 336-37 (Ct. App. 2003); *State v. Fuhriman*, 137 Idaho 741, 744, 52 P.3d 886, 889 (Ct. App. 2002). The contract analogy has been used to interpret plea agreements concerning the parties' responsibilities. *Dunlap*, 141 Idaho at 63, 106 P.3d at 389. And contract law, not due process law, is normally applied where one party allegedly breaches an agreement. *Lutes*, 141 Idaho at 914, 120 P.3d at 302; *Doe*, 138 Idaho at 410-11, 64 P.3d at 336-37; *Fuhriman*, 137 Idaho at 744, 52 P.3d at 889. For example, in *State v. Tyler*, 139 Idaho 631, 634, 84 P.3d 567, 570 (Ct. App. 2003), this Court held that a prosecutor was automatically excused from fulfilling his promise of recommending a particular sentence when the defendant first breached the plea agreement by committing a new crime. *See also Mata v. State,* 124 Idaho 588, 595, 861 P.2d 1253, 1260 (Ct. App. 1993) (prosecutor excused from making promised recommendation where agreement was conditioned on defendant having no prior felonies); *State v. Litz*, 122 Idaho 387, 388, 834 P.2d 904, 905 (Ct. App. 1992) (same). The *Tyler*, *Mata*, and *Litz* Courts did not require the lower court to conduct a hearing or undertake any other procedural component in order to determine whether the State was excused from performing its obligations under the agreement; rather, in all cases, simple contract law standards dictated that the breach or unfulfilled condition by one party automatically excused the other party's obligation to perform.

Here, Rogers entered an agreement by which the drug court agreed to keep Rogers in the program as long as he did not violate its terms or conditions. The record shows that Rogers had violated drug court terms and conditions numerous times before he actually was terminated.

8

Instead of terminating Rogers' participation for these violations, however, the court simply continued the matter and Rogers' participation in the program, instead choosing to impose intermediate sanctions in order to further the program's therapeutic goals. Eventually, however, the drug court judge learned of certain behavior by Rogers--that is, his alleged attempt to start an illegal prostitution ring involving other drug court participants--that, taking into account all of Rogers' previous breaches, provided the catalyst prompting the judge to expel Rogers from the program. Indeed, the record contains evidence that Rogers handed out business cards and discussed matters with other drug court participants pertaining to his fledgling business venture, Desire, Inc. While a review of the Phase I - Contract, Drug Court Participant Handbook, and Drug Court Guilty Plea Form does not reveal that drug court members are prohibited from engaging in illegal activity, such a condition is easily viewed as an implied promise on the part of Rogers. *See Tyler*, 139 Idaho at 634, 84 P.3d at 570 (holding that a plea agreement may contain an implied promise by a defendant). Rogers' involvement in illegal activity thus breached the agreement and excused the district court from retaining him in the drug court program. Moreover, even if Rogers' activities involved nothing more than the formation of a legal escort service, as he claimed, the inappropriate nature of this sort of action revealed a dangerous "attitude" which, by the terms of the Drug Court Participant Handbook,[14] constituted grounds for termination. Due to Rogers' breach of the agreement, the court was excused from its obligation to continue Rogers in the drug court program, and Rogers was thus properly terminated.

A contract law analysis in the context of a participant's termination from drug court adequately addresses the due process concerns raised by the dissent.[15] That is, the participant

[14]    The Drug Court Participant Handbook explains that termination is possible for "non-compliance, attitude, new criminal charges, bench warrants, or drug testing problems." Ada County Drug Court Participant Handbook, p. 10 (Sept. 2002).

[15]    Even if due process standards were to apply to Rogers' termination from drug court, we would disagree with the dissent's view that he was deprived of due process. From the record, it is apparent that any process that was due Rogers was adequately provided. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands . . . . Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481. Here, Rogers was apprised of his potential termination at a

9

has remedies available under the law of contracts to ensure that he is not terminated unfairly. As in cases where the State breaches a plea agreement, for example, the court may order specific performance of the agreement or may permit the defendant to withdraw the guilty plea.[16] *Santobello v. New York*, 404 U.S. 257, 263 (1971); *State v. Jones*, 139 Idaho 299, 302, 77 P.3d 988, 991 (Ct. App. 2003); *State v. Seaman*, 125 Idaho 955, 957, 877 P.2d 926, 928 (Ct. App. 1994). A drug court participant could move the court to order either of these remedies if he believed he was wrongfully terminated from the program, and either result would satisfactorily remedy the harm. If the guilty plea is withdrawn, the individual is restored to pre-prosecution status; if specific performance is ordered, the drug court would reinstate the individual into the program and continue treatment. These remedies are, in fact, derived from a recognition that due process requires the State to fulfill its promises to defendants if those promises induced the defendant to plead guilty in the first place. *See Santobello*, 404 U.S. at 263; *Jones*, 139 Idaho at 302, 77 P.3d at 991. Due process concerns are therefore sufficiently allayed through the contract-based means commonly used to remedy breaches of agreements between the State and a defendant.

By this opinion we do not wish to dissuade a judge from following termination procedures in drug court akin to those employed in a probation revocation process. To the contrary, in order to eliminate uncertainty and the appearance of unfairness, we encourage courts to do so. What is recommended is not, however, the equivalent of what is required. We decline

---

scheduled drug court status hearing, where the drug court judge made Rogers aware of the allegations that Rogers was engaged in illegal activity and scheduled another hearing so Rogers could show cause as to why he should not be terminated from the program. Rogers appeared at the show cause hearing, but did not effectively avail himself of the opportunity to refute the allegations. Subsequent to being terminated, Rogers was able to present witnesses who testified that no illegal prostitution business existed, in support of his motion for reconsideration of the decision to terminate him from drug court. The process afforded Rogers was sufficient to protect his rights.

[16] Rogers' waiver of his right to withdraw his guilty plea in his Drug Court Guilty Plea Form is not absolute, for a court could determine that he did not breach the agreement and was unfairly terminated.

10

to hold that Rogers was entitled to due process protections regarding his termination from the Ada County Drug Court program.

## C.   The Drug Court Judge's Factual Findings

Rogers also advances an alternative argument on appeal. He asserts that the drug court judge's factual findings that he had violated conditions of the drug court program are clearly erroneous, and therefore, he was improperly terminated from the program. We disagree.

Rogers' argument is based on two faulty premises. First, he assumes that the only terms and conditions of the Ada County Drug Court program are those set forth in the "Contract - Phase I document. This is not so. As stated above, the rules of the program, i.e., the terms and conditions, are set forth in the three operative documents: the Drug Court Guilty Plea Form, the Drug Court Participant Handbook, and the Phase I – Contract.

Second, Rogers asserts that he was terminated from the program solely because of the judge's belief that Rogers was involved in a prostitution ring and/or had taken steps to start an escort/stripper business. This also is not so. The judge was clear in stating that Rogers was being terminated not only for his conduct regarding Desire, Inc., but also for his repeated violation of program rules including, but not limited to, missed drug tests, positive drug tests, absconding, and missed treatment sessions. There is ample evidence in the record, including Rogers' admissions, supporting these findings of fact.

Rogers' claim of error in this regard is without merit. The drug court judge did not err in his factual findings providing the basis for Rogers' termination from the drug court program.

## III.
## CONCLUSION

For the foregoing reasons, the judgment of conviction for possession of a controlled substance and the order terminating defendant from drug court are affirmed.

Judge Pro Tem WALTERS **CONCURS**.

Judge LANSING, **DISSENTING**

I respectfully dissent because, in my view, Rogers had a protected liberty interest in remaining enrolled in drug court, and he was deprived of that liberty without due process when he was terminated without adequate notice of the evidence against him or an evidentiary hearing at which he could confront his accuser(s).

11

The Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids states from depriving persons of liberty without due process of law. To determine whether an individual's liberty has been taken without due process, a court must engage in a two-step analysis. It must first decide whether the individual's threatened interest amounts to a liberty interest protected by the Fourteenth Amendment. If it finds a liberty interest at stake, the court proceeds to the next step--determining the extent of procedural protections necessary to meet constitutional standards of due process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Schevers v. State*, 129 Idaho 573, 575, 930 P.2d 603, 605 (1996); *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 722, 918 P.2d 583, 591 (1996).

Drug court is a diversionary program. The drug court does not conduct conventional judicial proceedings but, rather, offers a regimen of substance abuse treatment under probation-like supervision with graduated sanctions and rewards, close court monitoring and supervision of progress, educational or vocational counseling as appropriate, and other requirements as may be established by the court. I.C. § 19-5603. As structured in Ada County, the drug court program requires defendants wishing to enter it to waive their preliminary hearing and to plead guilty to the charged offense. Participants are then released on their own recognizance, subject to the conditions imposed by the drug court. Upon successful completion of the program, a participant may have his or her guilty plea set aside and the charges dismissed. Participants who fail or are discharged proceed directly to sentencing in criminal proceedings on the basis of their guilty pleas.

In my view, the conditional liberty enjoyed by Ada County drug court participants is analogous to that of conventional probationers and is therefore subject to due process standards.[17] I rest this conclusion principally upon two United States Supreme Court decisions, *Morrissey*, and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). In *Morrissey*, the Court held that an individual's parole may not be revoked without due process. The Court observed that even though parolees do not enjoy absolute liberty, they nevertheless have "conditional liberty properly dependent on observance of special parole restrictions." *Morrissey*, 408 U.S. at 480. The Court described a parolee's conditional liberty as follows:

12

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.

*Morrissey*, 408 U.S. at 482. The termination of this conditional liberty, the Court observed, "inflicts a grievous loss" on the parolee because the parolee is immediately returned to prison. *Id.* at 482. Because parole revocation deprives a parolee of liberty, the Court held, it implicates the right to due process. *Id.* at 480. Subsequently, in *Gagnon*, the Supreme Court held that probation revocation likewise involves a loss of liberty and therefore may not be ordered without procedural safeguards that satisfy the Due Process Clause. *Gagnon*, 411 U.S. at 782.

Termination from the Ada County drug court program involves a loss of liberty akin to revocation of parole or probation. Participants must first plead guilty to a crime in order to be admitted into the program. They then enjoy conditional liberty while they abide by the terms of the program; they are released on their own recognizance and, like parolees and probationers, "can be gainfully employed and [are] free to be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Upon termination from drug court, a participant suffers a serious consequence as he or she proceeds directly to sentencing where the district court has the discretion to impose a sentence consistent with the guilty plea. In nearly every case, the sentence will consist of a term of incarceration.

Because diversionary programs differ so greatly from jurisdiction to jurisdiction, it is difficult to directly analogize Ada County's drug court program to those in other states. Nevertheless, decisions addressing the need for due process in diversionary programs carry a

---

17      For an analysis of this issue that reaches the same conclusion, see T.J. Oram & Kara Gleckler, Comment, *An Analysis of the Constitutional Issues Implicated in Drug Courts*, 42

common theme: whether a liberty interest is implicated turns upon whether the participant has already entered the criminal justice process. In *Hopper v. State*, 546 N.E.2d 106 (Ind. Ct. App. 1989), and *Hagar v. State*, 990 P.2d 894 (Okla. Crim. App. 1999), for example, the courts found that a liberty interest existed where the defendants had pleaded guilty in order to gain entry to a diversionary program and sentencing was held in abeyance pending completion of the program. The states of Illinois and Iowa also have long recognized that a defendant who enters a court-prescribed drug treatment program following the entry of a guilty plea has a protected liberty interest in continued participation and must be afforded due process upon expulsion. *See People v. Beckler*, 459 N.E.2d 672 (Ill. App. Ct. 1984); *State v. Grimme*, 274 N.W.2d 331 (Iowa 1979). On the other hand, in *Wood v. United States*, 622 A.2d 67 (D.C. Cir. 1993), and in *Deurloo v. State*, 690 N.E.2d 1210 (Ind. Ct. App. 1998), the courts held that divertees had no liberty interests because the diversionary programs preceded judicial proceedings and were not conducted under the auspices of the courts.[18] The *Deurloo* court specifically noted that the pre-prosecution nature of the program in that case distinguished it from *Morrissey* and *Gagnon*.

---

IDAHO L. REV., 471, 520-23 (2006).

[18] There are also at least two jurisdictions holding that even participants in "preadjudicatory" intervention programs have liberty interests in continuing their participation and must be afforded due process upon termination. *See People v. Anderson*, 833 N.E.2d 390 (Ill. App. Ct. 2005); *State v. Lebbing*, 385 A.2d 938 (N.J. Super. Ct. Law Div. 1978).

A case upon which the State relies, *Dunson v. Commonwealth*, 57 S.W.3d 847 (Ky. Ct. App. 2001), is inapposite. The defendant there had pleaded guilty and at sentencing was placed on probation with the condition that he participate in a drug treatment program. Subsequently it was reported that he failed to complete the treatment program. The court conducted an evidentiary hearing at which the defendant was able to present his own evidence and to cross-examine the treatment coordinator who had terminated him. Only after conducting this hearing did the district court revoke probation. On appeal, the defendant did not complain of the process afforded by the court; rather he contended that he was entitled to due process in a termination hearing conducted by the *treatment provider*. The appellate court rejected this argument because although the treatment program was known as "drug court," it was not a court in the jurisprudential sense but was merely a drug treatment program administered by the court system. *Id.* at 850. Thus, in *Dunson*, the defendant's termination from the treatment program was not done by a judicial officer and had no direct judicial implications; and before his probation was revoked he was afforded the full panoply of due process protections through an evidentiary hearing before the court.

Terminated Ada County drug court participants have already entered the criminal justice process. They have been adjudicated guilty of a crime, and upon expulsion from drug court they go directly to sentencing rather than return to pre-prosecution status. Unlike the diversion program participants in *Deurloo* and *Wood*, Ada County drug court program participants occupy a far different position after termination than they occupied before agreeing to enter drug court-- they have already waived many of their constitutional and procedural rights by entering a guilty plea, including the privilege against self-incrimination, the right to a jury trial, the right to confront one's accusers, and the right to challenge the admissibility of evidence upon which the State might have relied at trial. *See State v. Gardner*, 126 Idaho 428, 433 n.6, 885 P.2d 1144, 1149 n.6 (Ct. App. 1994). When terminated from drug court, they do not regain any of these rights but are simply sentenced.

An Ada County drug court participant's position is thus precisely equivalent to that of a criminal defendant whose charge has been disposed of by a guilty plea and an order withholding judgment under I.C. § 19-2601(3). Pursuant to that statute, upon entry of a guilty plea a district court may withhold judgment, subject to such terms as the court may prescribe, and may place the defendant on probation. The court neither enters a judgment of conviction nor imposes a sentence pending the defendant's completion of probation on court-ordered terms. *See State v. Wilson*, 127 Idaho 506, 509, 903 P.2d 95, 98 (Ct. App. 1995). For a defendant with a withheld judgment, the consequences of compliance or noncompliance with probation terms are identical to those for a drug court participant: if the defendant is successful, judgment is never entered and the case is dismissed, but if the defendant is unsuccessful the court may enter a judgment of conviction based on the guilty plea and sentence the defendant accordingly. *See State v. Woodbury*, 141 Idaho 547, 548-49, 112 P.3d 835, 836-37 (Ct. App. 2005); *Wilson*, 127 Idaho at 509, 903 P.2d at 98. This Court has applied the *Gagnon* rule requiring due process in the revocation of probation where judgment was withheld. *See State v. Roy*, 113 Idaho 388, 390, 744 P.2d 116, 118 (Ct. App. 1987). I find no characteristics of the Ada County drug court program that make it constitutionally distinguishable from probation pursuant to a withheld judgment.

Because there is a liberty interest that is impaired by termination from the Ada County drug court analogous to the liberty interest involved in parole and probation revocations, termination from drug court requires similar procedural safeguards. These are:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489. *See also Gagnon*, 411 U.S. at 786.

Rogers was not afforded these procedural safeguards before his termination from drug court. The only notice that he might be terminated came during a regularly-scheduled drug court status hearing, when the court confronted him with allegations about a prostitution ring. This was insufficient notice because it was not in writing and, more importantly, did not inform him of the evidence or witnesses against him. Of greater significance, Rogers was given no opportunity to confront and cross-examine adverse witnesses. The show-cause hearing afforded him an opportunity to present his own witnesses and documentary evidence, but without more specificity about the allegations against him and the source of those allegations, Rogers could not cross-examine his accuser(s) and may not have been able to identify all of the potentially pertinent rebuttal evidence.

The majority's holding that pre-termination due process is unnecessary because a terminated drug court participant can file a post-termination motion alleging breach of the plea agreement and request specific performance of the agreement is unsatisfactory for a number of reasons.[19] First, by requiring no process before the drug court expels a participant, the majority's

---

[19] It should also be noted that the alternative remedy for the State's or the court's breach of the drug court agreement--withdrawal of the guilty plea--is no solution because it would not give a drug court participant the benefit of the plea bargain. A defendant who pleads guilty pursuant to a plea agreement is entitled to receive the promised consideration for which he bargained. *Santobello v. New York*, 404 U.S. 257 (1971); *State v. Holdaway*, 130 Idaho 482, 484, 943 P.2d 72, 74 (Ct. App. 1997); *State v. Armstrong*, 127 Idaho 666, 668, 904 P.2d 578, 580 (Ct. App. 1995). This principle that the State must assiduously adhere to terms of a plea agreement is grounded in the Due Process Clause and the principle that for a guilty plea to be valid it must be voluntary and intelligent. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984); *State v. Doe*, 138 Idaho 409, 410, 64 P.3d 335, 336 (Ct. App. 2003); *State v. Rutherford*, 107 Idaho 910, 913, 693 P.2d 1112, 1115 (Ct. App. 1985). In the present case, Rogers' plea bargain not only promised him entry into drug court if he qualified, it also implicitly promised him a fair opportunity to successfully complete the program, avoid sentencing, and have the charges against him dismissed. Like the parolee in *Morrissey*, drug court participants rely on an implicit promise that

16

approach allows termination based on nothing more than unsubstantiated allegations or rumors or simple animus. In other words, it allows drug courts to initially terminate participants capriciously, on little or no grounds, leaving it up to the terminated participant to bring a *post hoc* challenge to the termination. I do not imply a view that the drug court in this case acted arbitrarily or capriciously; I merely point out that the majority opinion imposes no standards or procedures that would protect against it.

Second, the fact that drug court participants enter the program pursuant to a contract does not distinguish them from ordinary probationers who plead guilty pursuant to a plea agreement with the State and who, under *Gagnon*, are unquestionably entitled to due process before revocation of their probation. As the majority opinion correctly points out, plea agreements are contractual in nature, and Idaho courts have generally employed contract law standards in interpreting and enforcing parties' responsibilities under plea agreements. Yet, neither the United States Supreme Court nor Idaho courts have ever held that a court may revoke a defendant's probation without due process merely because the defendant was placed on probation pursuant to the terms of a plea agreement. Nor have we ever held that the State may be excused from its performance under a plea agreement without first demonstrating that the defendant has breached the agreement's terms. The drug court contract that Rogers signed nowhere says that he thereby waived his right to due process or consented to termination from the drug court program without cause or without a fair opportunity to challenge the alleged grounds for the termination. Therefore, I fail to see how the use of a contract for entering drug court participants bears upon the issue of what process is required before the participants can be discharged.

Third, the majority's analysis will allow a defendant to be returned to drug court after an initial termination only if the defendant shows that the termination was unwarranted. This shifts the burden to the defendant to prove that he did not violate drug court rules, but there is no requirement that he ever be informed of the specific evidence, or the witnesses supplying the

---

their conditional liberty will be revoked only if they fail to live up to the terms on which it is conditioned. *See Morrissey*, 408 U.S. at 482. A motion to withdraw the guilty plea, even if

17

evidence, upon which the court based its termination decision. In the case before us, so far as I can discern, Rogers was never notified of the identity of the witness or witnesses who allegedly provided the information upon which the court based its discharge decision. The burden to go forward with evidence showing just cause for a participant's removal from drug court more properly rests with the State.

Finally, the majority's approach requires the defendant to shoulder the burden of persuading the drug court (or perhaps a different district court judge) that the drug court itself breached the contract by wrongfully terminating the defendant without valid cause. That is, in many circumstances it will be the drug court judge, not the prosecutor, who is alleged to have acted improperly. Rather than placing this unenviable burden of persuasion on the defendant, it is far more fair, and concordant with ordinary jurisprudential practices, to require the drug court to hear and weigh the evidence for and against termination *before* the termination decision is made.

In summary, I would hold that Rogers suffered a loss of liberty when he was terminated from drug court without the requisite due process safeguards. I would therefore vacate the judgment of conviction and the order terminating Rogers from drug court, and remand for further proceedings.

---

granted, does not remedy an unjustified deprivation of the defendant's bargained-for opportunity to complete drug court and gain dismissal of the charge.

**APPENDIX 1**

NO _____

A.M. /1:55 FILED P.M. _____

FEB 1 2 2004

J. DAVID NAVARRO, Clerk

By _____
DEPUTY _____

Defendant's name: _Paul Rogers_

Case number: _H030309_

## A. RIGHTS IN GENERAL

1. You have the right to remain silent. You do not have to say anything about the crime(s) you are accused of committing. Anything you do say can be used as evidence against you in court.

2. You have the right to be represented by an attorney. If you want an attorney and cannot pay for one, you can ask the judge for an attorney who will be paid by the county.

3. You are presumed to be not guilty. You would be guilty only if:
    a. You plead guilty in front of the judge, or
    b. You are found guilty at a jury trial.

4. You have the right to a jury trial. A jury trial is a court hearing to determine whether you are guilty or not guilty of the charge(s). The decision on your guilt or innocence would be made by 12 people (called a jury) who would be chosen at random from the community. The state would try to prove you guilty by offering evidence to the jury. That evidence would include testimony under oath from witnesses, and it could also include documents, pictures, or other items. The jury would make its decision solely upon the evidence produced during your jury trial.

5. You would not have to prove your innocence at the jury trial. The state must prove you are guilty. The judge would tell the jury that they must presume you are not guilty of the crime(s), and that they cannot find you guilty unless all 12 of them are convinced beyond a reasonable doubt that the state has proven you are guilty.

6. You have the right to be present during your jury trial; to watch the witnesses face-to-face as they testify; and to question, or have your attorney question, those witnesses. You also have the right to present your evidence. You can get a court order (called a subpoena) requiring witnesses to come to court to testify.

7. You have the right to tell the jury yourself what happened. You cannot be required to do that against your will, however. You cannot be asked any questions during the trial unless you first agree to answer questions. If you choose not to testify, the state cannot say anything to the jury about your decision not to testify.

Been in jail on
This charge since
Sept 03
25 R.

8. If any evidence was obtained by the state in violation of your rights, you could ask the judge before the trial to keep the state from using that evidence against you.

9. Before the jury could find you guilty, the state must prove every element of the crime beyond a reasonable doubt. As a general rule, that means the state must prove everything alleged in the information or indictment. If you have any questions about what the elements of the crime(s) are, ask the judge to explain them to you.

10. You have the right to have a jury trial within six months of the date the information or indictment was filed in your case. If you are in custody, you also have a right to reasonable bail.

11. If you plead guilty, the judge will sentence you. That will usually occur later so the state and you can present information for the judge to consider when deciding on your sentence.

12. If you have been sentenced for another crime, or are sentenced for more than one crime in this case, your sentences could be consecutive or concurrent. If the sentences are concurrent, you would serve them all at the same time. If they are consecutive, you would serve each sentence separately, one after the other.

### B. INFORMATION SPECIFIC TO DRUG COURT PARTICIPANTS

1. Guilty Plea. In order to accept the option to participate in drug court, you must plead guilty to the charge in the Information. If you decide not to plead guilty, you cannot participate in Drug Court and your case will be remanded to the Magistrate division for preliminary hearing. If you decide not to plead guilty, your release on your own recognizance (ROR) may be revoked and the Court may set bond on your case. If you plead guilty, you cannot ask to withdraw your plea at a later date simply because you no longer wish to participate in drug court.

2. Termination from Drug Court. If you choose to terminate or you are terminated from the Drug Court program by the Court, the Court will set your case for sentencing. Upon termination from the program, your ROR release/bond may be revoked pending sentencing.

3. Conditions of Release. While you are a drug court participant, your ROR release or bond will be continued. Your release will also be subject to conditions related to your participation in the Drug Court program. These conditions will include abstinence from illegal drugs and alcohol, complying with your treatment program, attending scheduled Drug Court sessions, paying program fees, complying with all program rules and making satisfactory progress towards graduation. Additionally, you will be required to complete any forms and/or contracts required by the Drug Court program. The Court can revoke your ROR release and impose sanctions for failing to comply with these conditions of release.

4. <u>Fourth Amendment Waiver.</u> You have the right to remain free from unreasonable searches and seizures. Normally, this means that law enforcement must have a search warrant issued by a judge before your person, place of residence or things can be searched. To participate in Drug Court, you must waive this right and you must agree and consent to the search and seizure of your person, automobile, real property, and any other property at any time and at any place by any probation officer or any person assisting a probation officer or law enforcement and you do waive your constitutional right to be free from such searches and seizures for as long as you are a participant in the Drug Court.

5. <u>Firearms/Weapons.</u> The probation department assists the drug court judge in monitoring progress and compliance in drug court. You will not be permitted to reside in any residence where firearms or other weapons are present.

6. <u>Graduation.</u> Upon graduation from the Drug Court program, the Court will withdraw your guilty plea and dismiss the case against you, unless you are otherwise advised at the time you enter your plea.

7. <u>Waive Confidentiality.</u> Treatment records are confidential; you will be required to waive confidentiality.

**PLEASE ANSWER EACH OF THE FOLLOWING QUESTIONS BY WRITING YOUR INITIALS IN THE CORRECT BOX:**

| | YES | NO |
|---|---|---|
| Do you understand the above information? | ✓ | |
| Do you understand that by pleading guilty, you will give up the rights stated above? | ✓ | |
| Have you ever suffered from any mental illness or emotional disturbance? | ✓ | X _for ok_ _Rw_ |
| Have you ever been examined to see if you suffer from any mental illness or emotional disturbance? | | ✓ |
| Are you now taking any medications? | | ✓ |

DRUG COURT GUILTY PLEA FORM – revised 09/2003              Page 3       **00047**

23

|  | YES | NO |
|---|---|---|
| Are you under the influence of any drug, alcohol, or other substance? | | ✓ |
| Have you told your attorney all of the facts and circumstances surrounding the crime(s) charged? | ✓ | |

Your attorney can get from the prosecutor documents called "discovery." Those documents could be police reports, witness statements, etc.

|  | YES | NO |
|---|---|---|
| Have you seen the discovery? | ✓ | |
| Have you been able to discuss and go over the discovery with your attorney? | ✓ | |
| Are there any witnesses whose testimony could show that you are innocent? | | ✓ |
| Does the state have any evidence against you that you believe was wrongfully obtained? | | ✓ |
| Do you believe any of your rights were violated in connection with this case? | | ✓ |
| Do you believe you have any defense to the charge(s) against you in this case? | | ✓ |
| Do you understand that by pleading guilty, you will give up all defenses you may have to the charge(s)? | ✓ | |



24

|  | YES | NO |
|---|:---:|:---:|
| Have you had enough time to talk with your attorney about your decision to plead guilty? | ✓ | |
| Do you have any questions about whether or not you should plead guilty? | | ✓ |
| Are you satisfied with the job your attorney has done in representing you? | ✓ | |
| Other than the State's offer of drug court, has anyone promised you anything to get you to plead guilty? | | ✓ |
| Has anyone threatened to do anything to you, or to anyone else, to get you to plead guilty? | | ✓ |
| Do you understand that the judge will decide your sentence and that nobody can promise you what your sentence will be? | ✓ | |
| Would you rather go to trial than plead guilty? | | ✓ |
| Do you understand the crime(s) you are charged with committing? | ✓ | |
| Are you pleading guilty of your own free will? | ✓ | |
| Do you feel that anyone, including your attorney, has pressured you into pleading guilty? | | ✓ |

| | YES | NO |
|---|---|---|
| Is the decision to plead guilty based upon facts you know are true? | ✓ | |
| Do you understand that once you plead guilty, you cannot simply change your mind and withdraw your plea of guilty? | ✓ | |
| Have you received and reviewed a copy of the Drug Court Participant Handbook? | ✓ | |
| I understand and agree that the drug court judge has the authority to terminate me from the program for any single violation. | ✓ | |
| I understand and agree that the drug court judge can consider urinalysis results without any testimony or evidence concerning how the test was performed, the scientific basis for the instruments, the chain of custody, and the accuracy of the testing results. | ✓ | |
| Do you seek admission into the Drug Court Program, and accept all of its conditions and rules? | ✓ | |



DATED: _____1-11-04_____ SIGNED: _____

DRUG COURT GUILTY PLEA FORM – revised 09/2003          Page 6     00050

26

**APPENDIX 2**

# PARTICIPANT

# HANDBOOK

Fourth Judicial District Court

# ADA COUNTY

# DRUG COURT

Ada County Courthouse
200 W. Front Street, No. 4105
Boise, ID 83702
(208) 287-7670

**SEPTEMBER 2002 EDITION**

# TABLE OF CONTENTS

**Section**                                                     **Page**

Program Description ....................................................................... 1
Eligibility Criteria........................................................................... 2
Drug Court Supervision.................................................................. 2
Drug Court Program Rules............................................................. 3
Program Fees ................................................................................ 4
Treatment Procedures ................................................................... 4
Treatment Phases.......................................................................... 5
Termination .................................................................................... 7
Graduation ..................................................................................... 7
Conclusion ..................................................................................... 8
Phone Numbers............................................................................. 9
Attachments

29

Welcome to the Ada County Drug Court Program. This handbook is designed to answer questions, address concerns, and provide overall information about the Drug Court Program. As a participant, you will be expected to follow the instructions given in Drug Court by the Judge and comply with the treatment plan developed for you by your counselor. This handbook will detail what is expected of you as a Drug Court participant and review general program information. All participants are encouraged to share this handbook with family and friends.

## PROGRAM DESCRIPTION

The Ada County Drug Court Program is a court-supervised, comprehensive outpatient treatment program for certain chemically dependent defendants. This is a voluntary program and includes regular court appearances before a designated Drug Court Judge. Treatment includes drug testing, individual and group counseling. The drug court treatment provider is Ada County Treatment Services. Counselors will also assist with obtaining education and skills assessments and will provide referrals for vocational training, education and/or job placement services. The program length, determined by each participant's performance and progress, will be not less than one year.

Following arrest, if you are eligible, you will be offered a choice between the Drug Court Program or criminal prosecution. A Deputy Public Defender will advise you and discuss the Drug Court Program with you. If you choose to participate in the Drug Court Program, you will be released from jail on your own recognizance (ROR), subject to conditions that relate to your Drug Court participation.

You will be required to waive your preliminary hearing and to appear in the Drug Court. Prior to the appearance in Drug Court, you will have to complete an intake and screening process with the treatment provider and fulfill any other conditions of release, including random UA's and attend 12-step meetings. If you are accepted into the program, you will be required to plead guilty and your Public Defender or private attorney will continue to represent you throughout your participation in Drug Court. Your ROR release will continue subject to conditions that relate to your Drug Court participation. Successful completion and "graduation" from the program will result in having your guilty plea set aside and the charges dismissed. Failure or discharge from the program will result in your case proceeding to sentencing on the basis of your guilty plea.

1

Prior to entering your plea, your attorney will be provided with the police reports and a copy of the lab results. You can decide against entering the program at any time until you plead guilty. If you decide not to enter the program, the Court will revoke your ROR release and may set bond on your case and remand the case back for a preliminary hearing in Magistrate Court.

A Fourth Judicial District Court Judge serves as the Drug Court Judge. The Judge will oversee your progress and have full jurisdiction over the entire process. Final determination of entry into the Program will be made only by the Judge with input from the appropriate agencies.

## ELIGIBILITY CRITERIA

As a general rule, the Drug Court Program has been developed as an option for felony possession offenses. The program is not available to individuals with a criminal record for violence, non-Ada County residents, and any defendant who has a felony case pending or who is on parole, any defendant who has a significant prior criminal record, or any defendant who previously has been convicted of a serious drug offense. First priority will be given to offenders without prior felony convictions.

## DRUG COURT SUPERVISION

As a Drug Court participant, you will be required to appear in Drug Court on a regular basis. The Judge will be given a progress report prepared by your treatment counselor regarding your drug test results, attendance and participation in your treatment plan. The Judge may ask you questions about your progress and discuss any specific problems you have been experiencing.

If you are doing well, you will be encouraged to continue with the program and work with your counselor towards success. If you are not doing well in the program, the Judge will discuss this with you and determine further action. The goal of the Drug Court Program is to help you achieve total abstinence from illegal drugs and alcohol; however, a positive or "dirty" drug test will not automatically disqualify you. If you are having problems, the Judge may order a variety of sanctions such as additional testing including Breathalyzers, more

2

counseling, court attendance, community service or S.I.L.D., behavioral contracts, 90/90 (90 12-step meetings in 90 days), curfew, or jail.

At the time of program entry, you will be asked to waive your Fourth Amendment rights in order for you to be visited at your home randomly by the Drug Court probation officer. At the time of the probation officer's visit, you may or may not be required to submit to a Breathalyzer test. You may not have in your possession any alcohol, guns, or large knives that could be used for the purpose of a weapon.

If you do not appear in Court on the date and time scheduled, you will be arrested. If you cannot appear as scheduled, you must notify the court as soon as possible to explain why you cannot appear. If you have any questions regarding your court appearances, you may contact the Drug Court Coordinator at (208) 287-7670.

# PROGRAM RULES

As a Drug Court participant, you will be required to abide by the following rules:

**1. Attend all ordered treatment sessions.**

This includes individual and group counseling, educational sessions, and other sessions as directed. If you are unable to attend scheduled sessions you must contact either the treatment provider at (208) 331-5646 or the Drug Court Coordinator at (208) 287-7670. Contacting them does not automatically excuse you.

**2. Be on time.**

If you are late for treatment, you may not be allowed to participate and will be considered non-compliant. Contact your counselor at (208) 331-5646 if there is a possibility you may be late. If you miss calling the UA line before 4 PM or are late to do your Breathalyzer, contact the Drug Court Coordinator's office or your counselor. Contacting your counselor or the Drug Court Coordinator will not automatically excuse you.

**3. Do not make threats towards other participants or staff or behave in a violent manner.**

Violent or inappropriate behavior will not be tolerated and will be reported to the Court. This will result in termination from the Drug Court Program.

**4. Attend all scheduled Drug Court sessions.**

3

You must attend all court sessions as scheduled by the Drug Court Coordinator or as ordered by the Court. As a participant, you will be expected to dress appropriately for court and all drug court activities. Clothing bearing drug or alcohol related themes or promoting or advertising alcohol or drug use is considered inappropriate. Sunglasses are not to be worn inside the Court unless medically approved.

5. **Abstain from use of alcohol and illicit drugs.**

    This condition is fundamental to successful completion of the program.

6. **Do not frequent an establishment in which alcohol is the primary source of income.**

7. **Maintain confidentiality of other drug court participants.**

    Treatment cannot succeed unless all participants maintain the confidentiality of other participants and of information disclosed in treatment.

8. **Drug Court participants are not allowed to cohabitate.**

    You may not live at the same address as another Drug Court participant.

9. **Drug Court participants may not become involved in sexual or romantic relationships with other Drug Court participants.**

10. **You must comply with the Mentor Program's rules and guidelines.**

11. **The word of the Ada County Drug Court staff is considered to have the same weight as that of the Drug Court Judge.**

    Any questions or disagreements should be brought to the attention of the Drug Court Coordinator.

12. **The dress code, as adopted by the Ada County Drug Court, must be observed in Court, at the Ada County Treatment Services Center, at the Drug Court Coordinator's office, and at all Drug Court activities that you attend.**

    Your counselor will provide you with a copy of the dress code.

13. **You must be employed or a student throughout the duration of the program.**

    Participants may not be employed by other Drug Court participants.

14. **You are not allowed to share information with other participants regarding what UA colors are called, and you are not allowed to make "wake-up" calls to individuals assigned to do Breathalyzers.**

4

15. **Because the Treatment Services Center is in close proximity to other businesses, you must refrain from using loud or offensive language in the parking lot.**

    Wreckless driving in the parking lot or street near the Treatment Center will not be tolerated.

16. **Compliance is expected, but alone will not be counted as progress.**

    Attitude counts heavily.

17. **Green cards are to be turned in _____?**

    You must keep your green card on you at all times. Forging of green cards will result in discharge from the Drug Court program.

18. **Community service that has been assigned will be completed before your next court date. A form will be given to you in court when the community service is assigned. This form must be completed and returned to the secretary at the Treatment Services Center.**

19. **Cell phones must be turned off in the courtroom and when attending group.**

20. **Medications – over-the-counter or doctor prescribed – should be approved by your counselor or the Drug Court Coordinator.**

    If you have taken any medications be sure to alert the technician at the time you take a UA.

21. **Several forms must be completed on a regular basis.**

    Most of these forms are located in the lobby of the Treatment Services Center. Please ask the secretary or the counselor about the procedures and locations of these forms.

22. **Failure to comply with any of the above rules will result in sanctions.**

    Failure to comply with the Drug Court program rules will generate a Notice to Appear in which you will be called to appear before the Drug Court Judge at the earliest possible date, and you will be charged a fee of $10.00 for each Notice to Appear generated as a result of your noncompliance.

# PROGRAM FEES

As a participant, you must agree to pay Program fees of $15 per week. Payments shall be in the form of a money order made payable to the Ada County Treasurer and submitted to a staff member in the Drug Court Coordinator's office. Payment records will be

5

reported to the Judge as part of your regular progress report. Inability/failure to pay will not automatically result in termination from the Program. All fees must be paid prior to final disposition of your case. No one will be denied participation in the program due to inability to pay. Program fees are the sole responsibility of the participant and are not to be paid by other individuals (i.e. family members, other participants). Payment of fees is considered part of the Drug Court program. The Judge may order a payment plan be completed in the event that the amount due in fees becomes unacceptable. Payment plans can be obtained from and returned to the Assistant Coordinator. If unable to meet a payment due date as indicated on the payment plan, a written reason must be given to the Assistant Coordinator.

# TREATMENT PROCEDURES

Ada County has established a Drug Court Treatment Center at 7944 West King Street, Boise, Idaho 83704. Within twenty-four hours of your acceptance into the Drug Court program, you are required to contact the Ada County Drug Court Coordinator to schedule an orientation meeting. The orientation normally will be scheduled within 24 hours of your phone call and will take approximately one hour. A multi-component, outpatient program will be developed at that time which includes:

### 1. Treatment Planning

You and your counselor following an overall assessment of your problems and needs will develop an initial treatment plan. The plan will act as a guide for your first phases of treatment. This plan will help you set goals, select methods for reaching those goals, and develop target dates for achieving those goals. The plan will be kept in your treatment file for regular review and necessary updates as you progress through the Program. Any revisions to the plan will be made and signed by you and your counselor. **MONTHLY COUNSELING????**

### 2. Urinalysis

You will be tested throughout the entire treatment process. During the first few weeks, you will be tested frequently and randomly. As you progress through the Program, testing will be required on a less frequent basis. The Drug Court Judge will have access to all drug test results including any failures to test, abnormally dilute UAs which are considered as positive UAs, and no-shows, and may order a drug test at any time. The goal of the Drug Court Program is to help you achieve total

6

abstinence from illegal drugs and alcohol; however, a positive or "dirty" test will not automatically disqualify you. The Judge will be reviewing your overall performance in the Program. No new criminal charges will be filed as the result of any dirty test. During the period of time between applying for Drug Court and acceptance into the program, your UA color is PEACH. Upon acceptance into the Drug Court program, you will be assigned a new color. You must call the UA line (331-7825) every day, including weekends and all holidays, between the hours of 2:00 PM – 4:00 PM to see if your color is called. Calling is your responsibility and no one else is allowed to call for you. If your color has been called, you are then required to go to the Ada County Treatment Services Center between the hours of 3:00 – 5:00 PM and provide a UA sample. You are not to discuss with other participants your color or the colors that were called on the UA line. Doing so will lead to sanctions.

### 3. Counseling

Substance abuse counseling is comprised of three separate formats: Individual, group, and education. As part of your treatment plan, you will be required to participate in all three types of counseling. Together they are designed to develop self-awareness, realize self-worth, and practice self-discipline. The individual and group counseling sessions will include problem identification and alternative solutions. The educational sessions will include videos, lectures, guest speakers, special topics, and questions/answer session. Your attendance at counseling sessions will be reported to the Judge as part of your progress report. You must contact your counselor if you are unable to attend or will be late to a scheduled session.

### 4. Mentors

You will be assigned a mentor when you meet with the Drug Court Coordinator. A mentor is a graduate of the Drug Court program or a Phase IV participant who has volunteered to help you through your first phase. You will be required to stay in contact with your assigned mentor and turn in reports listing the contact dates.

### 5. Support Groups

You are required to attend 12-step support groups, obtain a sponsor, and work the steps. If you are ordered by the Judge to do "90/90" you will then need to attend one meeting a day for 90 days. You cannot miss a meeting on one day and "make it

7

up" by going to two meetings the next day. Be sure to have your green card signed with the correct date. Meeting schedules and locations for AA, CA, and NA are available at the Treatment Services Center.

# TREATMENT PHASES

The Drug Court Treatment Program is a four-phase, highly structured, outpatient treatment program lasting a **minimum** of one year, which may be extended depending upon your individual progress. Each phase consists of specified treatment objectives, therapeutic and rehabilitative activities and specific requirements for "graduation" into the next phase. The components and requirements for advancement from each phase are described below.

### PHASE I (minimum of three months in length)

You will attend three groups per week at the Ada County Treatment Services Center: Cognitive Self-Change (pre-CSC and CSC), Substance Abuse Education, and Process, as well as individual sessions based upon the described needs of the treatment plan. You will be required to attend a minimum of three 12-step groups and have regular contact with your mentor. Urinalysis will be at a minimum of two times per week and administered randomly. Phase I treatment may require ten hours or more per week.

In addition, you will be required to attend a New Participant Orientation class and may be assigned to participate in a Family Weekend.

Phase I primary focus is on the education of the participant to assist in breaking denial, raising awareness and instilling a commitment to the program.

### PHASE II (minimum of three months in length)

You will attend two group sessions per week and individual sessions based upon the described needs in the treatment plan. Urinalysis will be at a minimum of once per week administered randomly. Individualized treatment planning will be re-evaluated to ensure addressing any additional problems that arose in the screening or during the course of Phase I.

Phase II of the program becomes the working phase of the program. This focus is mainly on completion of the Cognitive and Substance Abuse Relapse packets. You may also be required to attend Anger Management and/or Relapse Prevention classes.

8

**PHASE III (minimum of three months in length)**

You will attend one to two group sessions per week based upon previous progress, and individual sessions based upon the described needs in the treatment plan. Urinalysis will be at a minimum of one time per week administered randomly. Individualized treatment planning will still be used to ensure addressing all problems, which arose in the screening or during the course of Phase II.

Phase III of the program focuses on living in recovery. The goal is to build skills for continued sobriety through life skills and self-discovery.

**PHASE IV (approximately three months in length)**

You will attend one to two group sessions per week for a minimum of three months to complete the treatment plan. Individual sessions are attended based upon the described needs in the treatment plan. Urinalysis will be at the treatment team discretion with a minimum number of one per week. Individualized treatment planning will be used to develop an aftercare plan and address any problems arising in Phase III of the program.

Phase IV focus is on using all program tools to establish and create a life long recovery plan.

# EXTRA-CURRICULAR PROGRAM ACTIVITIES

The need to replace drug-related activities is recognized by the Treatment Staff. Many drug-free activities are offered, such as softball, picnics, annual camping trip, bowling, ice skating, bike rides, exercise class, movies, and various other activities. You are encouraged to participate in any of these activities that interest you. You may join the Entertainment Committee or make suggestions at any time for future events. Articles for the Ada County Drug Court newsletter are always welcome. Contact the Assistant Coordinator if you wish to submit and article, poem, or story.

9

# TERMINATION FROM PROGRAM

This is a voluntary program. You can terminate at any time. You can also be involuntarily terminated by the Court for non-compliance, attitude, new criminal charges, bench warrants, or drug testing problems. The Drug Court Judge will make all termination decisions. If you are terminated involuntarily or you choose to terminate, you will be sentenced on the original charge. Short of program termination, you will be subject to a wide variety of possible sanctions for non-compliance or problems. All sanctions will be imposed by the Drug Court Judge and can include jail, trash detail, community service, additional testing, additional treatment, demotion in the program and additional court attendance.

# GRADUATION

Once you have successfully completed the criteria for each phase you will advance to the next level and eventually "graduate" from the Drug Court Program. Advancement from each phase and graduation from the Program shall be determined by the Drug Court Team with final approval determined by the Drug Court Judge. Prior to graduation, clients must be employed, make-up any missed sessions, fulfill their financial obligations to the Court or treatment program, complete an individual pre-graduation conference and have been clean for a minimum of six months. If those obligations have been met and based on each individual situation, the guilty plea will be set aside and the charges dismissed. Persons who complete all but the financial conditions will be allowed to graduate, but all legal benefits remain on hold until these obligations are satisfied. At graduation, your family will be invited to join in Court as the Judge congratulates you on successfully completing the Drug Court Program and achieving your goal to establish a drug-free life.

# ALUMNI

Alumni of the Ada County Drug Court program are welcome to attend any groups or activities.

10

Stay Active – Stay Clean!

# CONCLUSION

The Drug Court Program has been developed to help you achieve total abstinence from illegal drugs and alcohol. The Program is designed to promote self-sufficiency and to return you to the community as a productive and responsible member. The Program is voluntary and is your personal choice. The Judge, the court staff and your treatment counselor are present to guide and assist you, but the final responsibility is yours. You must be motivated to make this change and commit to a drug free life.

We hope this Handbook has been helpful to you and answered most of your questions. If you have any additional questions or concerns about the Drug Court Program, please feel free to contact your treatment counselor, the Drug Court Coordinator, or your Public Defender. Important Drug Court telephone numbers have been listed on the last page of this Handbook for easy access.

**GOOD LUCK TO YOU!**

11

# DRUG COURT PHONE NUMBERS

COURT PHONE                                    (208) 287-7556

ADA COUNTY TREATMENT SERVICES      (208) 331-5646
(ACTS)

ADA COUNTY PUBLIC DEFENDER'S        (208) 287-7400
OFFICE

DRUG COURT COORDINATOR                (208) 287-7670

UA LINE                                            (208) 331-7825 (6 - 9 AM)
                                                        EVERY DAY
                                                        including holidays

YOU MUST CONTACT <u>ADA COUNTY TREATMENT SERVICES @ 331-5646</u>
WITHIN TWENTY FOUR (24) HOURS OF YOUR ROR RELEASE
TO SCHEDULE AN INTAKE (SCREENING) APPOINTMENT.

### <u>HOTLINE NUMBERS</u>

NA HELPLINE    383-4568
AA HELPLINE    344-6611 or 1-800-627-9103
CA HELPLINE    841-8932 or 1-800-347-8998

12

## ADA COUNTY TREATMENT SERVICES CENTER
### 7944 West King Street, Boise
### 331-5646



**FOURTH DISTRICT COURT – ADA COUNTY DRUG COURT**
MarreenBaker Burton, Drug Court coordinator
287-7670

13

**APPENDIX 3**

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF
THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

* * *

**STATE OF IDAHO**

Plaintiff,

vs.

_Paul Roger_
Defendant

CASE NO. 1403003 0G

PHASE I - CONTRACT

The Drug Court Treatment Program is made up of four treatment phases. Each phase requires attendance at group/individual counseling, homework assignments, 12-step meeting attendance, payment of drug court fees, and drug screens. Attendance is mandatory. All absences are considered unexcused, unless you have approval from the Drug Court Judge or Drug Court Coordinator. No excuses will be considered for such things as child care problems, transportation difficulty, vacation, illness without doctor's excuse, employment conflicts, family problems, etc.

Your performance on this contract will be reported to the Judge to monitor your status in treatment.

**Phase I is scheduled to last three months. During Phase I, you will be responsible for the following:**

1) **To attend three groups per week at the Ada County Treatment Services Center: Cognitive Program, Substance Abuse Education, and Process.**

2) **To attend Individual Treatment sessions as directed.**

3) **To attend a minimum of three 12-step support groups per week. Remember to have your green card signed as proof of attendance and carry it on your person at all times. Verification of 12-step attendance may be required at any time.**

4) **To complete all homework assignments.**

5) **To inform the health care provider of your addiction and obtain written verification from the physician that he/she has been notified when prescribed any medication.**

00051

45

6) To remain free of all illegal drugs and all alcohol. Do not enter any establishment where the sale of alcohol is a major source of income. Alcohol must not be present in your home. Do not take any over the counter medication except aspirin, ibuprophen, and Tylenol without a doctor's prescription. Provide Ada County Treatment Services with copies of all doctor ordered medications. It is possible that time spent on a prescribed narcotic or non-approved medication may not count as time toward graduation; however, all other requirements during that time will still be required.

7) To submit to all drug tests including, but not limited to, random urine, breath, and/or oral fluid drug screens.

8) To pay Drug Court fees.

9) To obtain a sponsor.

10) To comply with mentorship program requirements. This includes going to a 12-step meeting within the first week of Phase I and maintaining weekly contact throughout Phase I with your assigned mentor. You are required to submit a monthly report of your mentor contacts.

Other requirements:_____

_____

_____

Before progressing to Phase II, you must complete all of the requirements of Phase I and obtain a sponsor.

This contract entered into on this _11th_ day of_February_, _2004_
                                                    Month              Year

_____
Drug Court Judge

I agree to all the terms and conditions set forth above.

_____
Defendant

DRUG COURT PHASE I CONTRACT – 10/03

00052

46