120 P.3d 299

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Richard B. LUTES, Defendant–Appellant.**

No. 30487.

Court of Appeals of Idaho.

June 10, 2005.

Review Denied Sept. 13, 2005.

 Griffard Law Offices, Boise, for appellant. Leo N. Griffard Jr. argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

GUTIERREZ, Judge.

Richard B. Lutes appeals from the district court's order relinquishing jurisdiction, contending that both the district court and prosecuting attorney violated the plea agreement and that the court abused its discretion in relinquishing jurisdiction. We affirm.

## I.

## FACTUAL AND PROCEDURAL SUMMARY

Lutes was charged with four counts of sexual abuse, three counts of lewd conduct and twenty-nine counts of rape for abusing, molesting, and raping his girlfriend's [1] fourteen-year-old daughter. An Idaho Criminal Rule 11 plea agreement was reached providing for Lutes to plead guilty to three counts of sexual abuse of a child under the age of sixteen, a violation of I.C. § 18–1506, for the state to dismiss the remaining charges, and for Lutes to receive concurrent unified fifteen-year sentences with retained jurisdiction. The victim and her .father participated in the negotiations leading up to the plea agreement, and later made statements at sentencing in which they asked for justice and indicated their belief that Lutes was a manipulative predator. The district court accepted the Rule 11 plea agreement and after Lutes pled guilty, imposed concurrent unified fifteen-year sentences with ten years determinate, retaining jurisdiction for 180 days. Lutes successfully completed the 180–day program, and the North Idaho Correctional Institution (NICI) generated a report recommending Lutes as a candidate for probation. At a review hearing following Lutes' retained jurisdiction program, the district court, over objection from Lutes' counsel, again permitted the victim and her father to make statements. The district court thereafter relinquished jurisdiction and ordered the execution of the previously imposed sentences. Lutes appeals, arguing that the plea agreement was breached by the presentation of victim statements at the review hearing and by the district court's relinquishment of jurisdiction in light of NICI's favorable report recommending probation.

[1]. The record indicates that Lutes and the victim's mother were eventually married.

## II.

## ANALYSIS

It is well established that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 498, 30 L.Ed.2d 427, 433 (1971). This principle is derived from the Due Process Clause and the fundamental rule that, to be valid, a guilty plea must be both voluntary and intelligent. *Mabry v. Johnson*, 467 U.S. 504, 508–09, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437, 442–43 (1984); *State v. Rutherford*, 107 Idaho 910, 913, 693 P.2d 1112, 1115 (Ct.App.1985). If the prosecution has breached its promise given in a plea agreement, whether that breach was intentional or inadvertent, it cannot be said that the defendant's plea was knowing and voluntary, for the defendant has been led to plead guilty on a false premise. *State v. Jones*, 139 Idaho 299, 301–02, 77 P.3d 988, 990–91 (Ct.App.2003). In such event, the defendant will be entitled to relief. *Santobello*, 404 U.S. at 262, 92 S.Ct. at· 498, 30 L.Ed.2d at 433; *State v. Fuhriman*, 137 Idaho 741, 744, 52 P.3d 886, 889 (Ct.App.2002).

Because plea agreements are contractual in nature, they generally are examined by courts in accordance with contract law standards. *State v. Doe*, 138 Idaho 409, 410–11, 64 P.3d 335, 336–37 (Ct.App.2003); *Fuhriman*, 137 Idaho at 744, 52 P.3d at 889. As with other types of contracts, the interpretation of a plea agreement and its legal effect are questions of law to be decided by the Court if the terms are clear and unambiguous. *Doe*, 138 Idaho at 410–11, 64 P.3d at 336–37. Contractual terms that are implied by the plea agreement, as well as those expressly provided, must be considered by the court. *Id.*

Lutes' argument is that his plea agreement must be given effect beyond the court's grant of retained jurisdiction. Lutes'

argument is therefore not premised on the literal language of the agreement, but on a term he contends is implied by the agreement: that if he performed satisfactorily on retained jurisdiction, he would be placed on probation. Lutes first asserts that he was entitled to be informed in open court of the reasonable inferences to be drawn from the plea agreement. This assertion is based on Lutes' interpretation of I.C.R. 11(c), which provides that the record of the entire proceedings, including reasonable inferences drawn therefrom, must show that a guilty plea was voluntary, knowing and intelligent.

■■■■ Where, as in the instant matter, a defendant argues that his guilty plea was not voluntary as a consequence of the state breaching an implied term of the contract, we necessarily examine whether that implied term can be reasonably inferred from the express language of the contract. The express terms of the plea agreement in this case provided that the state would make a recommendation for retained jurisdiction. The primary purpose of the retained jurisdiction program is to enable the trial court to gain additional information regarding the defendant's rehabilitative potential and suitability for probation. *State v. Goodlett*, 139 Idaho 262, 263–64, 77 P.3d 487, 488–89 (Ct.App. 2003). At the end of the period of retained jurisdiction, the court may suspend the sentence and place the defendant on probation, or may relinquish jurisdiction, allowing execution of the original sentence. If jurisdiction is relinquished, the court may also reduce the sentence at that time. *Id.* at 264, 77 P.3d at 489. Retained jurisdiction is not therefore the equivalent, as Lutes contends,

of delayed probation. When the district court agrees to a plea agreement calling for retained jurisdiction, we conclude, absent evidence to the contrary, that the only implied term one might reasonably infer is that the district court agrees to give genuine consideration to the Department of Correction's recommendation made at the conclusion of the retained jurisdiction period. Lutes' contention that the plea agreement in this case implied that he would receive probation therefore fails.

■■■ We turn next to the weight a court should afford the Department of Correction's recommendation. Lutes relies heavily on the fact that he received a favorable report from NICI recommending probation. However, there is no evidence that the district court did not properly weigh the NICI report in reaching its decision to relinquish jurisdiction. Reports from the Department of Correction concerning a defendant's behavior while in its custody on the rider program are not controlling. As Idaho Code § 19–2601(4), which provides for the 180–day rider period, clearly states:

> Probation is a matter left to the sound discretion of the court. Any recommendation made by the department [of correction] to the court regarding the prisoner shall be in the nature of an addendum to the presentence report.

As additional information appended to a presentence report, addendums are helpful but they do not carry any special significance. An addendum is part of the presentence report, which is itself informational. *See* I.C.R. 32. By contrast, I.C. § 19–2521 [2] provides the

---

**2.** I.C. § 19–2521 provides as follows:

**Criteria for placing defendant on probation or imposing imprisonment**

(1) The court shall deal with a person who has been convicted of a crime without imposing sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character and condition of the defendant, it is of the opinion that imprisonment is appropriate for protection of the public because:

 (a) There is undue risk that during the period of a suspended sentence or probation the defendant will commit another crime; or

 (b) The defendant is in need of correctional treatment that can be provided most effec-

tively by his commitment to an institution; or

 (c) A lesser sentence will depreciate the seriousness of the defendant's crime; or

 (d) Imprisonment will provide appropriate punishment and deterrent to the defendant; or

 (e) Imprisonment will provide an appropriate deterrent for other persons in the community; or

 (f) The defendant is a multiple offender or professional criminal.

(2) The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of avoiding a sentence of imprisonment:

criteria a court should accord weight to in determining whether to place a defendant on probation or impose imprisonment. Accordingly, even though the NICI report stated that Lutes was not a significant disciplinary problem and he completed assigned programs, the district court was not required to place Lutes on probation. We conclude that the district court gave proper consideration to the NICI report in reaching its decision to relinquish jurisdiction.

 Lutes also argues that it was a breach of the Rule 11 plea agreement for the state to present, and the district court to permit, the victim and her father to make statements at the review hearing. Lutes asserts that one might reasonably infer from the terms of the plea agreement that the victim and her father had agreed not to make any statements contrary to the plea agreement. As an initial matter, we address Lute's assertion that because there is no precedent or authority that permits such, a victim is not allowed to make a second statement at a review hearing. Article I, Section 22 of the Idaho Constitution affords victims of crime the right to be heard at *all* criminal justice proceedings considering a plea of guilty, sentencing, incarceration, placing on probation or release of the defendant, unless manifest injustice would result. This right has also been codified at I.C. § 19–5306. Clearly, the existence of a plea agreement or of prior victim statements does not, as Lutes argues, necessarily limit this constitutional and statutory right of victims to be heard.

 As to the content of the victim impact statements, Lutes argues that the terms of the plea agreement bind the victims to the same terms that bind the prosecutor. Victims do not become parties to a plea agreement simply because they were consulted regarding the agreement negotiations or because they express their approval of the agreement. In order for a third party to be bound to the terms of a contract, it must be shown that the contract was made for his or her direct benefit and that he or she is more than a mere incidental beneficiary. *Nelson v. Anderson Lumber Co.* 140 Idaho 702, 708, 99 P.3d 1092, 1098 (Ct.App.2004), *citing Dawson v. Eldredge*, 84 Idaho 331, 337, 372 P.2d 414, 418 (1962). It was the State of Idaho, not the victim or her father, that prosecuted Lutes for his crimes. That prosecution was done on behalf of the people of Idaho, not just the victims. Moreover, the record in this matter indicates that the victim impact statements made at sentencing addressed only the underlying sentence and retained jurisdiction. Whether Lutes would receive probation was not at issue during this hearing. At the review hearing, the victims addressed, for the first time, their position on Lutes receiving probation. The purpose of this hearing was for the court to determine whether Lutes would receive probation. The victim and her father therefore made statements aimed more specifically at articulating their belief that probation would be inappropriate. In sum, the victims requested that justice be served during Lutes' sentencing and indicated at the review hearing their

(a) The defendant's criminal conduct neither caused nor threatened harm;
(b) The defendant did not contemplate that his criminal conduct would cause or threaten harm;
(c) The defendant acted under a strong provocation;
(d) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(e) The victim of the defendant's criminal conduct induced or facilitated the commission of the crime;
(f) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that was sustained; provided, however, nothing in this section shall prevent the appropriate use of

imprisonment and restitution in combination;
(g) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime;
(h) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(i) The character and attitudes of the defendant indicate that the commission of another crime is unlikely.
(3) When a person who has been convicted of a crime is not sentenced to imprisonment, the court may place the defendant on probation if the supervision, guidance, assistance or direction is needed that the probation service has the resources to provide.

preference that Lutes not receive probation. These statements are clearly reconcilable as two parts of a unified desire for what they considered to be justice.

■ We are mindful that a prosecutor may not circumvent a plea agreement through words or actions that convey a reservation about a promised recommendation, nor may a prosecutor impliedly disavow the recommendation as something which the prosecutor no longer supports. *Jones,* 139 Idaho at 302, 77 P.3d at 991; *see also State v. Daubs,* 140 Idaho 299, 92 P.3d 549 (Ct.App. 2004). In this case, however, we conclude that the prosecutor merely facilitated the constitutional and statutory right of the victims to make a statement.

■ Having thus concluded that Lutes' plea agreement was not breached, we turn next to the district court's decision to relinquish jurisdiction. The decision to place a defendant on probation or relinquish jurisdiction is a matter within the trial court's discretion. *State v. Butler,* 122 Idaho 776, 776, 839 P.2d 43, 43 (Ct.App.1992). Absent an abuse of that discretion, the trial court's decision to relinquish jurisdiction will not be overturned. *Id.* When a district court's discretionary decision is reviewed on appeal, we conduct a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In order to determine whether Lutes was a viable candidate for probation, the district court considered the NICI report and asked Lutes several specific questions, including "[w]hat steps have you taken or what has occurred in your life since the time of making this [presentence] report for me to believe that your actions or your thought patterns have changed?" Lutes' answers to these questions did not satisfy the district court, which explained:

It was my hope, Mr. Lutes, that upon being returned from North Idaho Correctional Institution that you would demonstrate that there has been what I would characterize as an epiphany or a great shining light that has brightened your life indicating to you the error of your ways, accepting responsibility, avoiding denial. And when I say "accepting responsibility," I'm not convinced after having you today in court that you truly have accepted responsibility for the actions you've undertaken.... I'm concerned with regard to your past history and whether or not to believe each and everything that you say and believe in substance what you've told me today in court.

The record in this case therefore does not support Lutes' contention that the district court abused its discretion by relinquishing jurisdiction. Rather, as the district court's comments make clear, that decision was the product of the exercise of reason. We conclude that Lutes enjoyed the opportunity, as promised in the plea agreement, to demonstrate or persuade the district court of his rehabilitative potential. That he was unable to do so is not indicative of an abuse of the district court's discretion.

## IV.

### CONCLUSION

We conclude that the district court was not precluded from relinquishing jurisdiction over Lutes by the plea agreement, or by the favorable NICI recommendation. We also conclude that the plea agreement in this matter did not limit the right of the victim to speak at the review hearing, or otherwise restrict the content of that statement. Last, we conclude that Lutes has failed to show that relinquishing jurisdiction in this case amounted to an abuse of the district court's discretion. Accordingly, the order of the district court relinquishing jurisdiction is affirmed.

Chief Judge PERRY and Judge LANSING concur.