167 P.3d 357

STATE of Idaho, Plaintiff–Respondent,

v.

Timothy G. BRAATEN, Defendant–
Appellant.

No. 33161.

Court of Appeals of Idaho.

Aug. 8, 2007.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Timothy G. Braaten appeals from the district court order relinquishing jurisdiction over Braaten after he served a period of retained jurisdiction. Braaten contends that the district court violated the Due Process and Equal Protection Clauses of the United States Constitution by basing its decision on Braaten's indigence.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

Braaten pleaded guilty to sexual abuse of a child under the age of sixteen, Idaho Code § 18–1506. The district court imposed a unified sentence of five years with one and one-half years determinate and retained jurisdiction for 180 days pursuant to I.C. § 19–2601. At the end of the retained jurisdiction period, the district court suspended the sentence and placed Braaten on supervised probation. After Braaten served nearly two years of probation, the State filed a report of violation alleging that he had consumed alcohol and was not satisfactorily participating in sex offender treatment. The district court revoked

probation, but retained jurisdiction a second time and recommended that during the rider Braaten should receive treatment for alcohol addiction.

At the end of this second retained jurisdiction period, the court declined to again place Braaten on probation and instead relinquished jurisdiction. While acknowledging that Braaten's behavior during the rider had been appropriate and that the Department of Correction had recommended that he again be placed on probation, the court also noted that during the rider, the Department of Correction had reclassified Braaten's risk of reoffense from "low-to-moderate" to "moderate-to-moderately-high." Given this, the court expressed concerns about whether society would adequately be protected if Braaten were on probation when, because of his indigence, he would not be able to obtain proper housing and treatment. The district court's explanation of its reasons for denying probation included the following:

> Well, this is a very difficult case, given the nature of the underlying charge, of course. The State's recommendation repetitively refers to danger to the community and safety for the community....
>
> The difficulty here, I think, is can the court continue to manage this case under the structure of probation and do so in a meaningful way that is acceptable as far as the community is concerned. Given, if in fact the underlying charge were something other than, of course, the sexual abuse against minor children ... this type of a report with a recommendation of probation would routinely of course get approved without objection, and the defendant would be placed on probation....
>
> And in going through the report, there are some concerns as far as this court has in terms of being able to-whether we can effectively-court can effectively manage this case on probation
>
> ....
>
> [Defense counsel] says well, you are sentencing somebody to prison because they don't have any money. Well, yeah, that's probably exactly what we are doing. If he had more money he could afford transition housing. He could afford treatment. If

he had more money he could do some of the things ... which would allow the court to have a basis to rely upon in the face of the arguments of the threat to society and the danger to the community and unauthorized sexual contact. So, yeah, you have a situation where the nature of the case and the lack of money that the defendant has and the fact that they come up with the conclusion, that ... probation really is not a good way for the court to try to manage this case....

The court then relinquished jurisdiction but also reduced the determinate portion of Braaten's sentence to one year.

At the jurisdictional review hearing, Braaten objected to the court's consideration of his financial condition as a factor bearing on his fitness for probation, and he now appeals, contending that the district court's action violated his rights under the Equal Protection and Due Process Clauses of the United States Constitution.

## II.

## ANALYSIS

The decision to place a defendant on probation or relinquish jurisdiction after a period of retained jurisdiction is a matter within the trial court's discretion, *State v. Lutes,* 141 Idaho 911, 917, 120 P.3d 299, 305 (Ct.App.2005), but as with any exercise of judicial discretion, the court's decision must be consistent with any applicable law, including constitutional standards. *State v. Hedger,* 115 Idaho 598, 768 P.2d 1331 (1989); *State v. Amy,* 123 Idaho 287, 288, 846 P.2d 938, 939 (Ct.App.1992). Idaho Code § 19–2521 specifies that imprisonment should not be imposed upon a person convicted of a crime unless, "having regard to the nature and circumstances of the crime and the history, character and condition of the defendant," the court is of the opinion that imprisonment is appropriate for protection of the public. I.C. § 19–2521(1). Thus, a trial court may deny probation if it is of the opinion that imprisonment is necessary to protect society. The question presented here is whether a defendant's indigence may be factored into the analysis without violation of constitution-

al guarantees of due process and equal protection.

The United States Supreme Court "has long been sensitive to the treatment of indigents in our criminal justice system," *Bearden v. Georgia,* 461 U.S. 660, 664, 103 S.Ct. 2064, 2068, 76 L.Ed.2d 221, 227 (1983), because "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891, 899 (1956) (plurality opinion). Applying this principle, the Supreme Court has held that indigents generally must be given access to trial records, attorneys, and trial transcripts necessary for appeals. *See Mayer v. Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Griffin,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. More relevant to the issue here is a line of cases addressing whether a defendant may be imprisoned solely because he is unable to pay a fine or restitution. The earliest two, *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), hold that the state cannot subject a defendant to a period of imprisonment beyond the statutory maximum solely because he is too poor to pay a fine. In both cases, the fine that had initially been imposed was converted to days of imprisonment until the defendant had "worked off" the fine. The Supreme Court held that this amounted to imprisonment solely because of indigency and violated the Fourteenth Amendment's Equal Protection Clause. In *Bearden,* the Supreme Court held that an indigent defendant's probation could not be revoked for failure to pay fines and restitution if he had made all reasonable efforts to pay but was unable to do so through no fault of his own. *Bearden,* 461 U.S. at 668–70, 103 S.Ct. at 2070–71, 76 L.Ed.2d at 230–31.

■ According to the Supreme Court, a balancing test that includes elements of due process analysis and elements of equal protection must be applied to determine whether a criminal defendant's indigence may permissibly affect the sentence. *Tate* and *Williams* both employed an equal protection analysis, first determining that converting fines to a period of imprisonment that exceeded the statutory maximum created a discriminatory distinction between indigent and non-indigent defendants, and then holding that there were other, non-discriminatory methods for advancing the State's interest in punishing the defendant and collecting fines and costs. In *Bearden,* however, the Court noted:

> [A] defendant's level of financial resources is a point on a spectrum rather than a classification. Since indigency in this context is a relative term rather than a classification, fitting "the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished." *North Carolina v. Pearce,* 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969). The more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process.

*Bearden,* 461 U.S. at 666 n. 8, 103 S.Ct. at 2069 n. 8, 76 L.Ed.2d at 229 n. 8. The Court also said, however, that the distinction between an equal protection and due process analysis is not significantly different in this context, for:

> Due process and equal protection principles converge in the Court's analysis in these cases.... [W]e generally analyze the fairness of relations between the criminal defendant and the State under the Due Process Clause, while we approach the question whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause.
>
> ... There is no doubt that the State has treated the petitioner differently from a person who did not fail to pay the imposed fine and therefore did not violate probation. To determine whether this differential treatment violates the Equal Protection Clause, one must determine whether, and under what circumstances, a defendant's indigent status may be considered in the decision whether to revoke probation. This is substantially similar to asking directly the due process question of whether

and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine. *Bearden,* 461 U.S. at 665–66, 103 S.Ct. at 2068–69, 76 L.Ed.2d at 228. The Court went on to describe the analytical inquiry to be utilized in these cases:

> Whether analyzed in terms of equal protection or due process, the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as "the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose...."

*Bearden,* 461 U.S. at 666–67, 103 S.Ct. at 2069, 76 L.Ed.2d at 229 (quoting *Williams,* 399 U.S. at 260, 90 S.Ct. at 2031, 26 L.Ed.2d at 603 (Harlan, J., concurring)).

A claim very similar to Braaten's was considered by the Minnesota Court of Appeals in *State v. Morrow,* 492 N.W.2d 539 (Minn.Ct. App.1992). There, a defendant who had been convicted of various sex crimes was placed on probation on the condition that he successfully complete an inpatient sex offender treatment program. When the defendant could not afford the treatment and the county refused to pay for it, the sentencing court revoked probation. The defendant argued that the revocation of his probation due to his indigence violated due process and equal protection guarantees. The Minnesota court found no violation, however, because the state had a penological interest in incarceration where the defendant was unable to secure inpatient treatment and there were no alternatives to imprisonment that would satisfy the state's interest. *See also United States v. Johnson,* 347 F.3d 412 (2nd Cir. 2003) (applying *Bearden* balancing test in

determining that defendant was not denied due process when he received a longer probation period due to his inability to pay restitution quickly); *State v. Farrell,* 207 Mont. 483, 676 P.2d 168 (1984) (determining that despite state's penological interests, there was a possible due process violation in subjecting a defendant to the maximum sentence because the defendant could not pay restitution).

In the present case, because it appears that the district court treated Braaten differently than it would have treated a person who could afford housing and treatment, we follow *Bearden's* direction to examine the nature of Braaten's individual interest and how it was affected by the probation revocation, the rationality of the connection between the government's purpose and the means it used to achieve that purpose, and the existence of alternative means for effectuating the purpose.[1] *Id.* Having conducted that analysis, we conclude that the district court's consideration of Braaten's indigence when it denied probation did not violate the constitutional guarantees of equal protection and due process.

First, although Braaten naturally had a personal interest in being placed on probation after being held as an inmate during his period of retained jurisdiction, that interest is significantly lower than the interests of the defendants in *Tate* and *Williams,* who were imprisoned beyond the maximum sentence permitted by statute, or of the defendant in *Bearden,* whose probation was revoked. This is so because "[t]here is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex,* 442 U.S. 1, 9, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668, 676 (1979). Thus, the United States Supreme Court has held that one convicted of a crime has a significant liberty

---

1. In *State v. Butler,* 122 Idaho 776, 839 P.2d 43 (Ct.App.1992), we found no error where a district court considered the defendant's financial condition when deciding between probation and incarceration. We affirmed the trial court's relinquishment of jurisdiction, saying that "[a]lthough it is regrettable that there are not inpatient programs available to those of lesser financial means ... the court appropri-

ately considered the need to protect society, which is always the paramount objective of sentencing, along with [the defendant's] rehabilitative needs." Although the facts in *Butler* are squarely on point with the case now before us, *Butler* is a brief per curiam opinion where the Court was not asked to consider any constitutional issues. We therefore do not rely upon it here.

interest in *remaining* on probation or parole, which requires a hearing before that liberty may be revoked, *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), but an inmate's mere hope that he will be *granted* parole is not a liberty interest protected by due process. *Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2105, 60 L.Ed.2d at 677. It is "the difference between losing what one has and not getting what one wants." *Id.* at 10, 99 S.Ct. at 2105, 60 L.Ed.2d at 677 (quoting Henry Friendly, *Some Kind of Hearing,* 122 U. Pa. L.Rev. 1267, 1296 (1975)). Building on this distinction recognized in *Greenholtz,* the Idaho Supreme Court has held that the mere possibility of receiving probation after a period of retained jurisdiction is not a liberty interest sufficient to require the procedural due process of a hearing before the court relinquishes jurisdiction. *State v. Coassolo,* 136 Idaho 138, 30 P.3d 293 (2001).[2]

The next factor to be weighed is the State's interest or purpose and the rationality of the connection between this purpose and the means used to accomplish it. Unquestionably, the State has a strong and legitimate interest in protecting society from criminals and, therefore, in disallowing probation for an offender if the offender cannot be adequately supervised or if his conditional release will present an undue risk to society. The means used here to protect that interest—the denial of probation for Braaten due to his indigence—is directly and rationally related to this state interest. Without treatment, Braaten would be more likely to reoffend, and without housing, much more problematic to monitor and supervise. Braaten's lack of a resi-

dence and other resources could make it difficult, if not impossible, for him to comply with the most fundamental terms of probation such as obtaining and maintaining employment and maintaining contact with his probation officer.

Lastly, Braaten has not suggested any alternative method by which the trial court could have insured that he would have adequate housing and treatment, nor other means to minimize the risk of reoffense.

Balancing all of the factors identified in *Bearden,* we hold that the district court did not violate Braaten's right to equal protection or due process when it considered his indigence in deciding whether probation would be a tenable option. Braaten was denied probation not because of his lack of resources per se, but because of the effect of that lack of resources on the likelihood that he could be adequately supervised and the community protected if he were placed on probation. There has been no showing of any reasonable alternatives that would have adequately served the State's purpose to protect society.

Because we discern no constitutional violation in the district court's consideration of Braaten's indigence, the order relinquishing jurisdiction is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.

---

**2.** Citing *Coassolo,* the State argues that because a defendant is not entitled to a hearing that affords due process before a court relinquishes jurisdiction, no constitutional right could be implicated in any decision the court might make upon jurisdictional review. We disagree. Nothing in *Coassolo* suggests that a trial court considering relinquishment of jurisdiction may render a decision (with or without a hearing) that is fundamentally unfair or arbitrary or amounts to invidious discrimination. The State's brief, unfortunately, rests solely on this untenable argument and does not address the merits of the constitutional issue presented.