**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43313**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Unpublished Opinion No. 346** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: January 27, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JESS WADE YOST,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order revoking probation, affirmed.

Sara B. Thomas, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgenson, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Jess Wade Yost appeals from the order revoking probation, and for the first time on appeal, he argues this order violates his constitutional rights to equal protection and due process because the district court revoked probation due to his indigent status. For the reasons set forth below, we affirm.

**I.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Yost engaged in a sexual relationship with a minor child, videotaped the interaction, and posted the video to Internet sites. Yost was charged and pleaded guilty to sexual battery of a minor child. The district court imposed a twenty-five-year sentence, with five years determinate. Yost served a period of retained jurisdiction and was placed on supervised probation for a period of ten years. After approximately nine months on supervised probation, the State filed a report of probation violations alleging Yost had been discharged from sex-offender treatment, had

1

utilized the internet, and had viewed pornography. Yost entered admissions to those allegations, and the matter was set for disposition. The first disposition hearing was continued by the district court to allow Yost an opportunity to re-enter the sex-offender treatment program. Yost had been discharged from sex-offender treatment because he failed to stay current with the financial requirements of the treatment provider and failed to attend treatment sessions after his account was placed on hold for lack of payment. The district court allowed Yost additional time to make the necessary payments and attend the necessary treatment sessions.

At the second disposition hearing, Yost again argued that he should be placed on probation. Yost argued that despite the fact that he was employed and often had the money saved to pay for his treatment sessions, his inconsistent attendance at treatment should be excused because he had other financial obligations. In revoking probation, the district court stated:

> The Court is very concerned about the nature of the violation. The Court, after the admissions were entered, did subsequently hold disposition open for purposes of allowing the defendant to come into compliance with the terms and conditions. Certainly, the Court does understand the financial concerns; however, given the nature of the underlying offense, if the defendant does not have the financial ability to fully and completely participate in sex offender treatment, as required in the community, certainly that treatment is available in the correctional setting and financial ability does not interfere.
>
> It does appear that while Mr. Yost did get re-engaged and began again attending in April of this year that even then, he missed three of the eight groups. There's still an indication, as of June 4, 2015, that the defendant has not scheduled his individual sessions and has not participated in the required maintenance polygraphs.

The district court revoked Yost's probation and imposed the sentence, after reducing the determinate portion of the sentence to three years. Yost appeals the order revoking his probation.

## II.

## ANALYSIS

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262

2

(1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

Here, the constitutional rights at issue are Yost's due process and equal protection rights. Yost contends that he was denied equal protection of the law and his due process rights were violated because the district court revoked his probation on the basis that Yost was unable to pay for that treatment. We have recognized the United States Supreme Court "has long been sensitive to the treatment of indigents in our criminal justice system, because there can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *State v. Braaten*, 144 Idaho 606, 608, 167 P.3d 357, 359 (Ct. App. 2007) (quoting *Bearden v. Georgia*, 461 U.S. 660, 664 (1983) and *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) (plurality opinion)). However, the Court also provided that "a balancing test that includes elements of due process analysis and elements of equal protection must be applied to determine whether a criminal defendant's indigence may permissibly affect the sentence." *Id.* The "appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process." *Id.* (quoting *Bearden*, 461 U.S. at 666 n.8).

It is within the trial court's discretion to revoke probation if any of the terms and conditions of the probation have been violated. Idaho Code §§ 19-2603, 20-222; *State v. Beckett*, 122 Idaho 324, 325, 834 P.2d 326, 327 (Ct. App. 1992); *State v. Adams*, 115 Idaho 1053, 1054, 772 P.2d 260, 261 (Ct. App. 1989); *State v. Hass*, 114 Idaho 554, 558, 758 P.2d 713, 717 (Ct. App. 1988). In determining whether to revoke probation, a court must examine whether the probation is achieving the goal of rehabilitation and consistent with the protection of society. *State v. Upton*, 127 Idaho 274, 275, 899 P.2d 984, 985 (Ct. App. 1995); *Beckett*, 122 Idaho at 325, 834 P.2d at 327; *Hass*, 114 Idaho at 558, 758 P.2d at 717. The court may, after a probation violation has been established, order that the suspended sentence be executed or, in the alternative, the court is authorized under Idaho Criminal Rule 35 to reduce the sentence. *Beckett*,

122 Idaho at 325, 834 P.2d at 327; *State v. Marks*, 116 Idaho 976, 977, 783 P.2d 315, 316 (Ct. App. 1989). The court may also order a period of retained jurisdiction. *State v. Urrabazo*, 150 Idaho 158, 162, 244 P.3d 1244, 1248 (2010). A decision to revoke probation will be disturbed on appeal only upon a showing that the trial court abused its discretion. *Beckett*, 122 Idaho at 325, 834 P.2d at 327. In reviewing the propriety of a probation revocation, the focus of the inquiry is the conduct underlying the trial court's decision to revoke probation. *State v. Morgan*, 153 Idaho 618, 621, 288 P.3d 835, 838 (Ct. App. 2012). Thus, this Court will consider the elements of the record before the trial court relevant to the revocation of probation issues which are properly made part of the record on appeal. *Id*.

In this case, the record does not support Yost's claims that his probation was revoked due to his indigent status or solely because he was unable to pay for sex-offender treatment. We first note that Yost does not challenge that he admitted to violating the terms and conditions of his probation when he admitted to using the internet and viewing pornography in violation of his probation. Because the factual basis of the underlying conviction is that Yost videotaped the sexual encounter and posted it to the internet, these violations are significant and indicate an unwillingness to comply with the terms of probation and be rehabilitated. The district court did not abuse its discretion in revoking Yost's probation, and its decision is supported by Yost's admissions to these violations.

Yost's arguments on appeal focus on his claim that the district court revoked his probation because he was unable to pay for sex-offender treatment. As noted above, the district court was concerned with Yost's failure to participate in the sex-offender treatment given the serious nature of the charge; however, the district court gave Yost adequate opportunity to comply with this term of probation prior to revoking probation. Yost admitted that he failed to participate in sex-offender treatment, and when the court asked, "And why is it you admit that allegation?" Yost responded, "I didn't go." Yost also admitted he was discharged from the treatment program for financial reasons. At the first disposition hearing, the district court continued the hearing and delayed disposition for an additional three months to allow Yost the opportunity to re-enter the treatment program. This concession was based on Yost's representations to the court that he had money to pay off his account with the treatment provider and he would re-enter the treatment program. However, at the final disposition hearing, despite Yost's representations that he was employed and had funds available to pay for the treatment

sessions, the district court found that Yost had missed three of eight group sessions and had not scheduled the required individual sessions or polygraphs. Yost argued he continued to have financial problems because he missed work due to a work-related injury and because he had other financial obligations such as rent, insurance, credit card debt, and other court-ordered financial obligations. Therefore, it appears that Yost had funds to meet some of his financial obligations, but made the decision not to apply those resources to his sex-offender treatment, which was a condition of his probation. Further, Yost did not provide the district court with any documentation or evidence of his financial status, but instead relied on his argument that he was utilizing his income to pay other debts. Given the record before the district court, we cannot agree that the court violated Yost's constitutional rights to equal protection and due process. The record does not support Yost's claim that he was indigent or that the district court's decision to revoke probation was based solely on Yost's inability to pay for treatment. Rather, the decision to revoke probation was based on the concern that Yost had made a decision not to attend his treatment. Therefore, we cannot hold that the order revoking probation was so arbitrary or unfair as to constitute a denial of due process. For these reasons, we conclude that Yost has failed to meet his burden under the first prong of *Perry* because he has failed to meet his burden to show that a constitutional right was violated, and we need not address the other prongs of the *Perry* analysis.

### III.
### CONCLUSION

For the reasons set forth above, we hold the district court did not abuse its discretion in revoking Yost's probation. In addition, the district court's order does not amount to fundamental error, and Yost failed to show that his constitutional rights to equal protection and due process were violated. Accordingly, the district court's order revoking probation is affirmed.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.