# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket Nos. 49315/49321

STATE OF IDAHO,

  Plaintiff-Respondent,

v.

JUSTIN LEE RADFORD,

  Defendant-Appellant.

Filed: February 7, 2023

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge.

Orders relinquishing jurisdiction and executing suspended sentence and orders denying Idaho Criminal Rule 35 motion, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl Labrador, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

This case involves two consolidated cases. Justin Lee Radford appeals from the district court's orders relinquishing jurisdiction and executing his sentence and orders denying his Idaho Criminal Rule 35 motion for a reduction in his sentences. Radford alleges the district court erred by placing an evidentiary burden on him to negate the Idaho Department of Correction's (Department) recommendation to relinquish jurisdiction, instead of recognizing the decision to relinquish jurisdiction was discretionary. Radford additionally alleges the district court's decisions to relinquish jurisdiction and deny his Rule 35 motions were in error in light of the evidence he presented. Because the district court did not abuse its discretion in relinquishing jurisdiction or denying Radford's Rule 35 motions, the court did not err. The orders relinquishing jurisdiction and executing Radford's previously suspended sentences and orders denying his Rule 35 motions are affirmed.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Radford with burglary, two counts of grand theft, and a persistent violator enhancement. Pursuant to a plea agreement, Radford pleaded guilty to burglary, Idaho Code § 18-140, and the State dismissed the other charges. While the case was pending, the State charged Radford in a separate case with conspiracy to commit burglary, three counts of burglary, and grand theft of a financial instrument. Pursuant to a plea agreement, Radford pleaded guilty to conspiracy to commit burglary, I.C. §§ 18-1401, 18-1701, and grand theft, I.C. §§ 18-2403(1), 18-2407(1)(b)(3), and the State dismissed the other charges. The cases were consolidated for sentencing.

The district court sentenced Radford to eight years, with four years determinate, for burglary; nine years, with four years determinate, for conspiracy to commit burglary; and ten years, with five years determinate, for grand theft, with the sentences to run concurrently. The court retained jurisdiction. At the jurisdictional review hearing, the district court told Radford that he had not performed well during the period of retained jurisdiction, but nonetheless the court suspended execution of Radford's sentences and placed him on a three-year term of probation.

Thereafter, the State filed two separate reports of violation. Each time, Radford admitted the probation violations; the district court revoked probation, executed the underlying sentence, retained jurisdiction, and thereafter, placed Radford back on probation. The State filed a third report of violation. Radford admitted to violating the terms of his probation; the district court found he violated the terms of his probation, revoked probation, and executed the underlying sentences. The district court stated it seldom gave defendants four periods of retained jurisdiction, it was concerned that Radford would not be successful during the retained jurisdiction, and this would be Radford's last opportunity to be placed on probation if he successfully completed the retained jurisdiction program. The district court made clear that it would not consider further opportunities for probation. The district court retained jurisdiction for a fourth time.[1]

---

[1] It appears there was some confusion at this hearing about how many periods of retained jurisdiction Radford had previously been granted. While the State correctly asserted that Radford had been granted three prior periods of retained jurisdiction; when asked by the district court, Radford and Radford's counsel stated he had been granted two; the court seemed to accept this assertion.

During Radford's fourth period of retained jurisdiction, he received multiple written warnings and a Class B disciplinary offense report (DOR). At the subsequent jurisdictional review hearing, the parties reviewed Radford's disciplinary record and discussed Radford's disciplinary problems reported in the addendum to the presentence investigation report (APSI) filed by the Department; the APSI recommended early relinquishment of jurisdiction. Radford disputed one of the written warnings reported in the APSI and offered explanations for the others. Radford categorized the written warnings as largely "minimal, minor-type corrective actions." Radford also disputed the DOR, which he believed was the reason the Department recommended relinquishment. Radford asked the district court to continue the period of retained jurisdiction to allow him to show that he corrected his behavior and he could comply with expectations.

The district court stated it found Radford's file "disturbing on many counts," but the court did not have enough information in the disciplinary summary to fully assess what had happened, particularly in relation to the DOR. The district court continued the hearing for the parties to "obtain as much information as they can about these items that took place, these disciplinary matters that took place," in order to provide Radford with "some more due process before the Court makes up its mind." Prior to the new hearing date, the Department filed a letter with the district court with further updates since the APSI. The letter stated:

> Mr. Radford was removed from the "Rider" program during the first part of July of 2021 for acts of violence. Since that time, Mr. Radford has been housed at Idaho Correctional Institute-Orofino (ICIO), as he was deemed to pose a security risk and threat to NICI. On 08/03/21, a report from NICI was sent to the court recommending Mr. Radford for relinquishment. Since that report, Mr. Radford has, once again, committed another act of violence while housed at ICIO. Mr. Radford was found guilty of another Class B DOR for Violence on 08/20/21. It appears that no matter where Mr. Radford goes in the Idaho Department of Correction, he carries his criminal behavior and thinking with him, which usually means violence, as this is his second offense in the year of 2021.

This was Radford's second Class B DOR. At the continued review hearing, Radford explained that he attempted to subpoena surveillance video of the second DOR to refute the Department's reported version of events. The Department filed a motion to quash the subpoena and, consequently, Radford had not obtained the surveillance video at the time of the hearing. Despite not having the video, Radford wished to proceed with the hearing. The district court responded "[t]hat being the case, it's your burden in this matter. So go ahead." Radford testified to the circumstances surrounding the DORs; the first arose from an incident during a telephone call, and

the second concerned what Radford described as his attempt to verbally de-escalate a situation while incarcerated in Orofino. Radford stated that he did not commit any violence in regards to the second DOR, and he did not acknowledge that a fight even took place.

In support of his challenge to the DORs, Radford also submitted additional reports from the Department regarding the DORs. The district court confirmed it received the reports. Radford and the State made closing arguments; Radford asserted the DORs were "much more nuanced than the Department of Corrections would lead the Court to believe" and perhaps the Department was "mixing or blending those two incidents together." Radford requested the court continue the period of retained jurisdiction or, in the alternative, to reduce his sentences to five years, with two years determinate. Radford also made a statement to the court outlining his plan for probation and explained he had a job, mental health resources, and state-funded housing in Washington. He also stressed to the court that he wished to finish his period of retained jurisdiction so he would have a chance to be released and be an active parent in his daughter's life.

The district court stated it reviewed Radford's file. The court noted that despite multiple periods of retained jurisdiction, Radford continued to incur various disciplinary warnings and infractions while incarcerated and was deemed a security risk by the Department. The court relinquished jurisdiction and ordered execution of Radford's previously suspended sentences. Radford filed Rule 35 motions which, after a hearing, the court denied. Radford timely appeals.

## II.

## STANDARD OF REVIEW

The decision to place a defendant on probation or whether, instead, to relinquish jurisdiction over the defendant is a matter within the sound discretion of the district court and will not be overturned on appeal absent an abuse of that discretion. *State v. Hood*, 102 Idaho 711, 712, 639 P.2d 9, 10 (1981); *State v. Lee*, 117 Idaho 203, 205-06, 786 P.2d 594, 596-97 (Ct. App. 1990).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Radford argues the district court erred by relinquishing jurisdiction and executing his previously suspended sentences and denying his Rule 35 motions. In response, the State argues the district court did not err and, alternatively, any error was harmless.

### A. The District Court Did Not Err by Relinquishing Jurisdiction

Radford argues the district court abused its discretion by relinquishing jurisdiction because: (1) it did not recognize the decision whether to revoke his probation was discretionary and instead imposed a burden upon him to negate the Department's relinquishment recommendation; and (2) the evidence at the jurisdictional review hearing demonstrated Radford made programming progress while incarcerated, did not commit any new criminal offenses since the underlying conviction, and secured housing arrangements upon release. Radford also argues the district court should have provided him the opportunity to complete his programming on his fourth period of retained jurisdiction or reduce his sentences as requested.

#### 1. The district court did not misunderstand the discretionary nature of its relinquishment decision

Radford argues that because the district court required him to negate the Department's reasons for its relinquishment recommendation, the court failed to recognize that the decision whether to relinquish jurisdiction was discretionary. The State argues the district court correctly understood it had discretion but because Radford was disputing information contained in the APSI, it was Radford's burden to provide evidence supporting his claim. We agree with the State.

Idaho law authorizes a court to retain jurisdiction over a defendant, after imposing sentence, for up to 365 days. I.C. § 19-2601(4). During that time, the defendant is in the custody of the Department, and the Department may submit a report to the sentencing court concerning the defendant's behavior. I.C. § 19-2601(4). The primary purpose of the retained jurisdiction program is to enable the trial court to gain additional information regarding the defendant's rehabilitative potential and suitability for probation. *State v. Lutes*, 141 Idaho 911, 915, 120 P.3d 299, 303 (Ct. App. 2005). Thus, in order to reach a reasoned decision about whether to place the defendant on probation or relinquish jurisdiction, the trial court should properly weigh the information provided to it by the Department or the defendant about whether the defendant is an appropriate candidate for probation. *See id.* A trial court does not abuse its discretion when it follows the recommendation of the Department that jurisdiction be relinquished. *State v. Chavez*, 120 Idaho

460, 462, 816 P.2d 1017, 1019 (1991). Further, the district court's reliance on the presentence investigation report (PSI), the APSI, and the recommendation of the Department in determining whether to place the defendant on probation or to relinquish jurisdiction is appropriate and is not an abuse of discretion. *See State v. Steelsmith*, 153 Idaho 577, 583-84, 288 P.3d 132, 138-39 (Ct. App. 2012) (holding district court did not abuse discretion by finding protection of society warranted relinquishing jurisdiction because, in part, PSI and APSI noted defendant's failure to take responsibility for actions).

Although the district court did not explicitly state that the determination whether to relinquish jurisdiction was discretionary, the court's statements both at the initial and continued review hearing, demonstrate the court recognized the issue as discretionary, understood the outer bounds of its discretion, and applied reason in reaching its decision. *See State v. Latneau*, 154 Idaho 165, 166, 296 P.3d 371, 372 (2013) (holding district court's statements demonstrated recognition of discretionary nature of relinquishment decision when it reviewed mental health evaluation and presentence investigation reports, expressed concern about defendant's criminal history and performance while on retained jurisdiction, and ultimately found defendant was not good candidate for probation).

While it is true that the Department's recommendation is purely advisory and is in no way binding upon the trial court's decision, *State v. Coassolo*, 136 Idaho 138, 143, 30 P.3d 293, 298 (2001), if the information from the Department is the only information presented to the court, then the court does not err in relying on the information provided in deciding whether to relinquish jurisdiction. Accordingly, if the defendant wants the district court to consider information in addition to, or in contradiction of, the information submitted by the Department, then the defendant, as the proponent of the claim, carries the burden of production regarding additional evidence. *See id.* (holding it is important for trial court to receive report from Department on its assessment of defendant's conduct during period of retained jurisdiction and, in interest of fair judicial process, court should also receive in writing any response defendant may choose to make regarding recommendation).

In response to the Department's recommendation, Radford provided two investigative reports from the Department regarding the DORs. The Department's investigative report regarding Radford's first DOR provided interview summaries from Radford, the other individual in the altercation, and several third-party witnesses. Although in his interview Radford did not

admit to any physical altercation, the other individual stated that after a verbal altercation over the telephone, Radford grabbed him by the arms, which caused a bruise inside his right bicep, and then Radford slapped him in the face several times. This version of events was corroborated by two other witnesses. One witness stated that Radford swung at the individual, missed, and then slapped him; and the other witness stated that Radford slapped the individual in the face four times.

The Department's investigative report regarding the second DOR described Radford as conspiring in an act of violence. The narrative report outlined a description of surveillance camera footage taken from inside one of the Department's facilities as follows: Two inmates got into a heated argument in Radford's presence; the two individuals then entered a cell and removed articles of clothing. Radford did not enter the cell, but as another inmate walked away from the cell, Radford pointed at the cell door; the other inmate shut the cell door, and then Radford pressed on the cell door to ensure it was shut and secure. Almost immediately thereafter, the two individuals in the cell began fighting. Photographs taken after the incident show the two individuals sustained multiple injuries as a result. The report concluded that Radford's actions with the cell door could "only be interpreted as intentional concealment of the fight," and Radford "assisted and/or conspired in the committing of this offense." Thus, in accordance with Department policy, Radford was held accountable to the same level of offense as those who took part in the fight.

The district court stated it reviewed Radford's file, including the APSI, a letter from the Department, and reports from Radford's counsel, and considered Radford's testimony. The district court found that despite multiple periods of retained jurisdiction, during which Radford knew "what the rules are and how specific they are in those correctional settings," Radford continued to receive warnings and infractions for breaking various rules and was eventually disciplined for acts of violence. The district court noted that during this most recent period of retained jurisdiction, the Department declared Radford to be a security risk and moved him to a different facility, where he was again disciplined for an act of violence. The district court considered Radford's testimony, but "was unpersuaded" about Radford's suitability for probation. The district court then relinquished jurisdiction.

In context, the district court's references to Radford's "burden" were not an abdication of the court's exercise of discretion, a misunderstanding that the court was bound by the Department's recommendation, or an improper evidentiary burden shifting to Radford. Rather, the statements

were acknowledgements that if Radford wanted to dispute either the Department's recommendation to relinquish jurisdiction or the factual basis for the recommendation (or both), Radford needed to provide some evidence to the district court; otherwise, the court would make its decision based on the evidence before it, which consisted solely of the evidence from the Department detailing Radford's problematic behavior. Accordingly, the district court did not err.

### 2. The district court did not err in relinquishing jurisdiction

Radford alleges the district court abused its discretion by relinquishing jurisdiction because the evidence at the jurisdictional review hearing demonstrated he made programming progress while incarcerated, did not commit any new criminal offenses since the underlying convictions, and secured housing arrangements upon release. These assertions ignore the multiple written warnings, the two Class B DORs, and Radford's early removal from the rider program. While the APSI noted that Radford had completed over 60% of his programming while incarcerated and demonstrated an in-depth understanding of the skills taught, it also stated that "it appears [Radford] does not transfer the skills outside the classroom due to his violence disciplinary action," "struggles with honesty in his situations and role-plays," and when he is "called on his dishonesty, he often turns to aggression and anger." Further, while Radford may not have been charged with any criminal offenses while on probation, he did admit to using controlled substances while on probation and, therefore, it is not accurate to assert that he did not commit any criminal offenses during this time.

Regardless, the record in this case, as detailed above, shows the district court properly considered the information before it and determined that relinquishing jurisdiction was appropriate based upon Radford's continued concerning behavior while incarcerated, despite four periods of retained jurisdiction. Accordingly, Radford has failed to show the district court abused its discretion in relinquishing jurisdiction.

### B. The District Court Did Not Err by Denying Radford's Rule 35 Motions

Radford alleges the district court abused its discretion by denying his Rule 35 motions because the new and additional information he presented supported a reduction in his sentences. Specifically, Radford alleges in his testimony at the Rule 35 motion hearing that he had family, job opportunities, medical insurance, social security benefits, mental health treatment, and public housing available in Washington which warranted a reduction in his sentence.

A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting an I.C.R. 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of an I.C.R. 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987).

Although on appeal Radford points to his testimony at the Rule 35 motion hearing that he had medical insurance, social security benefits, mental health treatment, and public housing secured in Washington as well as family and job opportunities, as information to support a reduction in his sentence, none of this information was new or additional information to the district court. At the fourth jurisdictional review hearing in which Radford requested a reduction in his underlying sentences, Radford made the following statement:

> The Court has been wanting me to get a job and be actively in mental health and have a job and housing. I have no support in Idaho, but I have all that stuff in Washington now. I'm state-funded over there for housing, so I have a permanent place to live.
> . . . I just want to be able to at least go back and finish my rider for my daughter's sake. I'd like to be able go home and be a better parent.

Accordingly, the district court was aware of the information which Radford points to on appeal as support for his Rule 35 motions prior to Radford's Rule 35 hearing. Moreover, as outlined above, Radford's conduct after sentencing does not support a reduction in his sentences. Therefore, the district court did not err in denying Radford's Rule 35 motions.

## IV.

## CONCLUSION

The district court did not abuse its decision by relinquishing jurisdiction or denying Radford's Rule 35 motions. Accordingly, the district court did not err and the orders relinquishing jurisdiction and executing the previously suspended sentences and orders denying the Rule 35 motions are affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.